**VALERO ENERGY CORP. et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF ENERGY et al., Defendants.**

**No. SA–80–CA–369.**

United States District Court,
W. D. Texas,
San Antonio Division.

Nov. 7, 1980.

John R. Cope, Roger L. Reynolds, Daryl J. Hudson III, Bracewell & Patterson, Washington, D. C., Charles Roberts, Foster, Lewis, Langley, Gardner & Banack, San Antonio, Tex., for Valero Energy Corp.

Jon Wood, Matthews, Nowlin, MacFarlane & Barrett, San Antonio, Tex., for City of San Antonio.

Richard C. Balough, Asst. City Atty., Austin, Tex., for City of Austin.

James F. McKibben, Jr., Kleberg, Dyer, Redford & Weil, Corpus Christi, Tex., Jay B. Doegey, Asst. City Atty., Corpus Christi, Tex., for City of Corpus Christi.

Stan L. McLelland, McLelland & Thornberry, Austin, Tex., Michael W. Fox, Soules & McCamish, Inc., San Antonio, Tex., for United Texas Transmission Co.

Ralph B. Weston, Kleberg, Dyer, Redford & Weil, Corpus Christi, Tex., for Central Power & Light Co.

Daniel F. Shea, Regulatory Litigation Division, U. S. Dept. of Energy, Washington, D. C., Jack Moynihan, Asst. U. S. Atty., San Antonio, Tex., for United States Dept. of Energy, Charles W. Duncan, and Melvin Goldstein.

Robert L. Ketchand, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for Gas Del Oro, Inc.

## MEMORANDUM OPINION AND ORDER

SESSIONS, Chief Judge.

In this cause, Plaintiffs seek injunctive relief restraining Defendants from enforcing their interpretations of certain regulations. As grounds for the relief sought, Plaintiffs challenge the construction of their contract by the Department of Energy ("DOE") and DOE interpretations of certain regulations. On October 23, 1980, hearing was held in this cause upon the Motions of the Defendants to Dismiss.

Having considered the exhibits, the motions, and the briefs of counsel, the Court finds the matters presented herein are not yet suitable for adjudication and accordingly dismisses the cause for the reasons set forth below.

*REGULATORY PROVISIONS:*

The Department of Energy regulates the maximum allowable price for certain petroleum products, including propane, under the authority of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751, *et seq.* Regulations have been issued governing the computation of the maximum price. In computing the maximum price, product cost increases since the May, 1973, base period may be added in. One of the increased product costs which may be included in the maximum selling price of propane is the cost of natural gas shrinkage. 10 C.F.R. § 212.167. "Cost of natural gas shrinkage" is defined as "the reduction in selling price per thousand cubic feet (MCF) of natural gas processed, which is attributable to the reduction in volume or BTU [1] value of the natural gas resulting from the extraction of natural gas liquids, as determined pursuant to the contract in effect at the time for which cost of natural gas shrinkage is being measured, and under which the processed natural gas is sold." 10 C.F.R. § 212.162. Propane is one of several natural gas liquids (NGLs) and natural gas liquid products (NGLPs) which are removed from "wet" natural gas in producing the processed natural gas sold to the Plaintiff customers in this cause. Plaintiffs claim, and this Court will assume for purposes of this Memorandum Opinion and Order, that DOE has interpreted this regulation to mean that the cost of natural gas shrinkage will be calculated by reference only to the price term of the contract for the sale of the processed natural gas. *See* Ruling 1975–18 [1975] *Fed. Energy Management* (CCH) ¶ 16,058, at 16,659. Thus, according to this DOE interpretation of its regulation, if the price term of the sales contract for processed

natural gas shows an MCF basis, the cost of natural gas shrinkage must also be computed on an MCF basis, whether or not the "wet" natural gas is purchased by the processor on an MCF or a BTU basis.

Title 10, C.F.R., Part 205, subpart B, of the DOE regulations "establishes the procedure for applying for an exception from a regulation, ruling, or generally applicable requirement based on an assertion of serious hardship or gross inequity." 10 C.F.R. § 205.50(a)(1). All applications for exception must be filed with the Office of Hearings and Appeals (OHA). 10 C.F.R. § 205.-52(a). The regulations further provide that the Director of OHA shall issue a final decision and order stating the factual and legal basis for the order. 10 C.F.R. § 205.-69B(a). A final decision and order may be appealed to the Federal Energy Regulatory Commission (FERC) within 30 days after issuance by "any person whose interest is adversely affected by a denial of exception relief." 10 C.F.R. § 205.69B(b). The regulations further require that a person must file a timely appeal and await the issuance of a final decision in the appeal proceeding in order to exhaust administrative remedies in the case of a denial of exception relief. 10 C.F.R. § 205.69B(c).

The DOE regulations also provide, at 10 C.F.R. Part 205, subpart F, "procedures for the filing of a formal request for an interpretation and for the consideration of such a request." 10 C.F.R. § 205.80(a). A request for interpretation must be filed with the Office of General Counsel or the appropriate regional counsel. 10 C.F.R. § 205.82. "Responses ... to other than formal written requests for interpretation filed with the General Counsel ... or a regional counsel ... are not interpretations and merely provide general information." 10 C.F.R. § 205.80(a). There is no administrative appeal of an interpretation. 10 C.F.R. § 205.-86. It is clear, therefore, that the word "interpretation" holds a specific meaning in connection with the DOE regulations, and a

---

1. "BTU" means British Thermal Units, and is a measure of the energy content or heating value of a substance.

specific procedure must be followed in order to obtain an interpretation.

## THE ADMINISTRATIVE PROCEEDINGS:

On August 8, 1978, Lo-Vaca Gathering Company ("Lo-Vaca") and Coastal States Gas Corporation ("Coastal"), the predecessors of Plaintiff VALERO, filed an application for exception with OHA.[2] Included in that application was a request that DOE "permit VALERO ... to utilize the BTU method of calculating natural gas shrinkage in determining increased product costs." Lo-Vaca and Coastal stated in that application that Plaintiff VALERO would sell processed natural gas on a cost-plus basis, and that those gas sales would be calculated on a BTU purchase-cost basis. However, "for purposes of billing the gas customers, this calculation ... is adjusted to an MCF basis." The application went on to state that "[a]lthough Valero's initial natural gas sales will not be expressed on a BTU basis, the sales price is directly reflective of and dependent on Valero's BTU cost. Moreover, the formula reduction in the cost of such gas should approximate closely the sale of gas on a BTU content basis." Finally, the application stated that "the formula will compensate directly for the major part of the loss of heating value (BTUs) as a result of processing and provide that the price of natural gas to Valero's customers will be closely equivalent to the price on a strict BTU basis."

On February 16, 1979, OHA issued its proposed decision and order pursuant to 10 C.F.R. § 205.56. In the proposed decision and order, OHA stated that "Valero will be required to sell the natural gas produced ... on an MCF basis and the sales price will partially depend upon the price of the NGLs and NGLPs produced by Valero" under a settlement plan approved by the Tex-

as Railroad Commission.[3] The proposed decision and order went on to "find that Valero's use of an MCF shrinkage formula would not constitute a serious hardship to Valero." It also stated that OHA under the circumstances "must conclude that Valero's use of an MCF shrinkage formula ... would not constitute a gross inequity." For these reasons, the proposed decision and order announced the intention of DOE to deny the request for exception from the requirements of the regulations in the calculation of shrinkage cost.

On April 18, 1979, Lo-Vaca filed its statement of objections to the proposed decision and order in accordance with 10 C.F.R. § 205.61. Lo-Vaca stated in those objections that although the invoices would express Valero's selling prices for processed natural gas on an MCF basis, "a careful review of [the Railroad Commission] order reveals that these prices are premised entirely on the purchase and sale of gas by Valero on a BTU adjusted basis."

On June 17, 1980, OHA issued its final decision and order upon the application for exception filed by Coastal and Lo-Vaca, denying exception relief with respect to the calculation of shrinkage costs. OHA found that the MCF shrinkage formula caused no gross inequity to VALERO or the purchasers of processed natural gas. OHA also found that the shrinkage regulations "adequately compensate Valero for the 'opportunity cost' of foregone natural gas revenues" as a result of natural gas shrinkage. In connection with the contention that the Railroad Commission rate order established the processed natural gas price on a BTU basis rather than an MCF basis, OHA stated its opinion that the rate order did not do so, but rather established a price term on an MCF basis.

---

**2.** Throughout this Memorandum Opinion and Order, the Court will refer to and quote from numerous documents that were attached as exhibits to the voluminous pleadings filed by the parties in this cause. These references and quotations will not be cited to the exhibits involved.

**3.** On September 4, 1979, the Texas Railroad Commission entered a rate order governing the price at which Plaintiff VALERO may sell natural gas. The parties to this cause have agreed, and the Court finds, that the September 4, 1979, rate order is the gas sales contract for purposes of this cause.

On July 25, 1980, Plaintiffs filed their complaint in this cause seeking injunctive and declaratory relief preventing Defendants from enforcing the June 17 final decision and order. An Agreed Temporary Restraining Order was entered in this cause on July 28, 1980, restraining the Defendants "from taking any further actions to enforce or implement any requirement that Valero Energy Corporation calculate its costs of natural gas shrinkage on the basis of the volumetric reduction in the processed natural gas resulting from the extraction of propane." This TRO was vacated on October 6, 1980, when Plaintiffs failed to carry their burden at the hearing on Plaintiffs' Motion for Preliminary Injunction.

*MOTIONS TO DISMISS:*

On September 25, 1980, the original Defendants filed their motions to dismiss. In those motions Defendants characterized Plaintiffs' Complaint as challenging only the June 17, 1980, final decision and order of OHA, and asserted four grounds for their motion:

(1) That Plaintiffs seek an advisory opinion upon the meaning of their contract as that contract is expressed in the Texas Railroad Commission Order of September 4, 1979, and therefore, there is no case or controversy and the Court is without jurisdiction;

(2) That Plaintiffs failed to exhaust the administrative remedies available to them in connection with the denial of the exception relief sought, and therefore, the Court is without jurisdiction;

(3) That the final decision and order by OHA of June 17, 1980, is not ripe for judicial review; and

(4) That venue is improper in the Western District of Texas.

On October 3, 1980, after being permitted to intervene, Defendant GAS DEL ORO filed its Motion to Dismiss asserting that the Court lacks jurisdiction because Plaintiffs have failed to exhaust their administrative remedies for denial of exception relief.

On October 17, 1980, Plaintiffs filed their Memorandum in Opposition to Defendants' Motion To Dismiss. In that memorandum, Plaintiffs characterized this cause as not a mere challenge to the June 17, 1980, final decision and order of OHA upon the application for exception, but asserted that their Complaint states three alternative claims. At the October 23, 1980, hearing on the Motions to Dismiss, Defendants contended that the alternative claims, discussed below, were contained nowhere in Plaintiffs' Complaint, and that only the only possible construction of the Complaint was as a challenge to the June 17 final decision and order. Plaintiffs, on the other hand, adhered at the hearing to their position that three alternative claims were presented in the Complaint. The Court questions whether these alternative claims were present in the Complaint. However, in view of the liberality with which courts permit amendment of pleadings up to the time of trial, the Court will assume for purposes of this Memorandum Opinion and Order, that Plaintiffs have in fact presented in their Complaint all the claims which they asserted in their memorandum opposing dismissal. The Court will also assume that Plaintiffs additionally present a direct challenge to the June 17 final decision and order. The Court will now consider Plaintiffs' contentions.

Plaintiffs characterize their first claim in this cause and in their challenge to the June 17 final decision and order not as a challenge to the denial of exception relief, but instead as a challenge to an "interpretation" of the regulations (specifically 10 C.F.R. §§ 212.161 & 212.167), contained in that final decision and order. They assert that this "interpretation" is final and not appealable within the agency. Plaintiffs argue that OHA has issued a final "interpretation" of their contract and the regulations by stating that the price term of Plaintiffs' gas sales contract is an MCF price term which dictates that Plaintiffs must calculate their shrinkage cost on an MCF basis. Plaintiffs' first claim is that this "interpretation" is an incorrect and illegal interpretation of their contract and the regulations.

Plaintiffs' second claim in this cause is that the formal interpretations of these regulations, which have been issued by DOE since 1975 and which, Plaintiffs assert, state the DOE position that the price term of a gas sales contract is determinative of whether shrinkage may be calculated on an MCF or a BTU basis, are also incorrect and illegal interpretations of the regulations. Plaintiffs argue that the regulations clearly contemplate examination of the contract as a whole in determining whether shrinkage costs will be calculated on an MCF or BTU basis. Plaintiffs, therefore, seek to have this Court grant them pre-enforcement review of these formal interpretations of the regulations.

Plaintiffs' third claim in their Dismissal Memorandum is that if the Court should find DOE's earlier interpretations of the regulations to be valid (i.e., consistent with the regulations), then the regulations themselves are violative of the statutory dollar-for-dollar pass-through requirements and of equal protection. In connection with this claim, Plaintiffs also characterize this cause as one seeking pre-enforcement review of the regulations.

*EXHAUSTION OF ADMINISTRATIVE REMEDIES:*

■ Plaintiffs apparently implicitly acknowledge that to the extent that they are simply challenging the June 17 final decision and order of OHA upon the exception application, they have failed to exhaust their administrative remedies. However, because Plaintiffs have not expressly conceded this point the Court will address the issue. As provided by the applicable regulation, it is evident that Plaintiffs have not exhausted their administrative appeals of the result in the exception proceedings, as that result is stated in the June 17 final decision and order. Title 10, C.F.R., Section 205.69B, provides that a final decision and order issued by OHA in an exception proceeding may be appealed to FERC. Plaintiff VALERO, in fact, is pursuing that administrative remedy. Therefore, the Court finds that an administrative remedy remains available to Plaintiffs that has not been exhausted on this particular claim.

In attempting to circumvent the likely result of their failure to exhaust remedies, Plaintiffs argue that the June 17 order contains an "interpretation" (see 10 C.F.R. Part 205, subpart F) which is not appealable within the agency. 10 C.F.R. § 205.86. Although, the regulations provide that formal "interpretations" may be issued only in response to formal written requests for interpretations filed with the General Counsel. 10 C.F.R. § 205.80, Plaintiffs argue that OHA has determined it can issue final agency interpretations of regulations in the context of gas plant spin-offs and acquisitions. Plaintiffs cite a number of cases in which, they assert, OHA has done this. However, the cases cited by Plaintiffs do not further Plaintiffs' cause in the instant case. In each of those cases it is stated that the agency decided to consider the issues in "a consolidated proceeding and to issue a single decision and order to be signed by the Director of the Office of Exceptions and Appeals [now OHA] and the Assistant Administrator for Regulatory Programs." *The Oil Shale Corporation,* [1976] 3 FEA (CCH) ¶ 83,139 at 83,520 ("TOSCO"). See also *Kenco Refining, Inc.; Tesoro Petroleum Corp.,* [1977] 5 FEA (CCH) ¶ 83,105, at 83,460; *Russell B. Newton,* [1976] 3 FEA (CCH) ¶ 83,138 at 83,511. Thus, unlike the present case, any "interpretations" contained in the decisions cited by Plaintiffs were not issued in the context of simple exception proceedings nor were they issued solely by OHA.

Although Plaintiffs' predecessors, Lo-Vaca and Coastal, sought a consolidated proceeding in their application for an exception, the June 17 final decision and order did not contain the consolidated proceedings and joint order language. Accordingly, if OHA has determined that it can issue binding "interpretations" of regulations in gas plant spin-off and acquisition exception proceedings, it appears that OHA did not follow the procedure it has established, and therefore, did not issue such a final "interpretation" in the June 17 final decision and order. Moreover, even assuming that OHA

did in fact issue an interpretation in the June 17 final decision and order, that decision and order states specifically that it is appealable. Furthermore, the decisions and orders cited by Plaintiffs in the consolidated proceedings also state that they may be appealed. See, e.g., *Kenco Refining, Inc.; Tesoro Petroleum Corp., supra,* at 83,466; *Russell B. Newton, supra,* at 83,518–83,519 (1976). Therefore, assuming that OHA has issued "interpretations" in final decisions and orders on exception proceedings, it is clear that OHA, in establishing the procedure for doing so, also has retained the administrative appeal provision of 10 C.F.R. § 205.69B in that procedure.

Finally, it appears that in the June 17, 1980, final decision and order, OHA did no more than would be necessary for it to decide upon an exception application; OHA applied the regulations and interpretations to the gas sales contract to determine whether exception relief was necessary. Title 10, C.F.R. § 212.162, provides that cost of natural gas shrinkage is to be calculated on the reduction in selling price per MCF of processed natural gas "which is attributable *to the reduction in volume or BTU value of the natural gas resulting from the extraction of natural gas liquids, as determined pursuant to the contract* in effect at the time." (Emphasis added). Lo-Vaca and Coastal sought an exception which would allow them to calculate shrinkage cost on a BTU basis. However, if the contract was such that the regulations would permit shrinkage cost calculation on a BTU basis, no exception would be needed. Thus, as in any exception proceeding, OHA had to apply the regulations to the contract to determine whether the contract would allow shrinkage cost calculations on a BTU basis or an MCF basis. It appears to the Court that OHA did that here and that OHA must do that as an initial matter in any exception proceeding. Therefore, it appears that OHA issued a decision that is similar to its decision in any other exception proceeding, and did not issue a final "interpretation" of the regulations. Accordingly, Plaintiffs should appeal to FERC in order to exhaust their administrative remedies.

Therefore, to the extent that this cause is a challenge to the June 17 final decision and order, the construction of the regulations contained therein, and the construction of the contract contained therein, Plaintiffs have not exhausted their administrative remedy and there is no final agency action until FERC has ruled. Accordingly, this Court is without jurisdiction over such a challenge at this time.

*RIPENESS:*

In addition to the challenge discussed above, Plaintiffs assert they are seeking a pre-enforcement review of the shrinkage cost regulations and the formal interpretations which have been issued upon those regulations. Plaintiffs claim that when correctly construed the regulations require reference to the entire natural gas sales contract rather than reference merely to the price term of the contract in determining the appropriate method for calculating the cost of natural gas shrinkage. Plaintiffs assert that DOE and its predecessors have construed these regulations to require reference only to the price term of the contract, and that DOE has adhered to this construction of the regulations since 1975. Defendants, on the other hand, assert that a challenge to the regulations and the formal interpretations of the regulations is not ripe at this time so far as Plaintiffs are concerned.

■ The test for ripeness in a proceeding seeking pre-enforcement judicial review of administrative regulations is set out in the *Abbott Laboratories* trilogy of cases. See *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). The ripeness doctrine requires a Court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories, supra,* 387 U.S. at 149, 87 S.Ct. at 1515. The factors established in the *Abbott Laboratories* trilo-

gy which the Court must consider in deciding the ripeness issue are as follows: (1) whether the issues presented are purely legal; (2) whether the issues are based on final agency action; (3) whether the litigation is calculated to expedite final resolution rather than delay or impede effective agency enforcement; and (4) whether the controversy has a direct and immediate impact on the Plaintiffs' business. *See Standard Oil Company v. Department of Energy*, 596 F.2d 1029, 1039 (Em.App.1978), aff'g *Standard Oil Company v. Federal Energy Administration*, 440 F.Supp. 328 (N.D.Ohio 1977); and *Phillips Petroleum Company v. Federal Energy Administration*, 435 F.Supp. 1239 (D.Del.1977). It appears that the challenges presented by Plaintiffs in this cause cannot satisfy these criteria.

█ Initially, the Court must determine what issues are being presented to it for decision. Plaintiffs seek pre-enforcement judicial review of the interpretations and the regulations, but they do not seek this review in a vacuum. Rather, in order for them to present what is even arguably a case or controversy, they must be seeking review of the regulations and interpretations *as applied to their contract.*

Although Plaintiffs' claims on this point are not clearly defined, it appears to the Court that Plaintiffs are attempting to argue that their challenge to the regulations and interpretations is put forward in two contexts; they are attempting to challenge the regulations and the interpretations both with and without reference to Plaintiffs' gas sales contract.

Considering the latter context first, Plaintiffs present to the Court a non-justiciable issue to the extent that they seek to challenge the regulations and interpretations without reference to their contract. Without the contract upon which to operate, the regulations would have no effect upon Plaintiffs. That being the case, Plaintiffs would have failed to put forward the jurisdictional requisite to a justiciable case of controversy—"concrete legal issues, presented [in an] actual case, not abstractions." *Golden v. Zwickler*, 394 U.S. 103,

108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), quoting *United Public Workers of America (C.I.O) v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). As the Supreme Court stated in *North Carolina v. Rice*, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), "[t]o be cognizable in a federal court, a suit 'must be definite and concrete, touching the legal relations of parties having adverse legal interests * * * it must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Id.*, at 246, 92 S.Ct. at 404 (quoting *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). If no reference were made to a gas sales contract in connection with these regulations and interpretations, Plaintiffs would stand in no different position than a member of the general public with purely intellectual curiosity about the correct meaning of the regulations and who was seeking an advisory opinion from the Court. The Court cannot render an advisory opinion. Therefore, to the extent that Plaintiffs are attempting to challenge the regulations without reference to their contract, they have presented a non-justiciable issue to the Court, over which the Court lacks jurisdiction.

Plaintiffs' challenge to the regulations and interpretations as applied to their contract also presents to the Court a non-justiciable issue. The issue raised by this challenge fails to satisfy the ripeness criteria. Initially, the issues presented are not purely legal. For the Court to perform a pre-enforcement review of these regulations and interpretations as applied to Plaintiffs' contract, it would be necessary for the Court to construe the contract. Construction of the contract is likely to raise mixed questions of fact and law, and therefore, the Court cannot say that it is presented with purely legal issues in this context. In their oral argument at the hearing upon these motions, Plaintiffs stated that they would concede that their contract contains an MCF

price term, thereby conceding what they see the agency position to be with respect to the contract. Plaintiffs apparently seek by this concession to remove the factual issues surrounding the construction of the contract. However, this Court does not believe, even with this concession by Plaintiffs, that the purely legal issues contemplated by the ripeness doctrine and the *Abbott Laboratories* trilogy are presented in this cause.

In *Abbott Laboratories*, a number of drug manufacturers challenged a regulation that would have required them to place the "established name" of their products on the product labels at each place where the trade name appeared. The manufacturers challenged the regulation as exceeding the authority of the agency and the requirements of the statute. No additional factual matters had to be addressed, and there was no question of the application of the regulation to the manufacturers' products. Rather "the issue tendered [was] a purely legal one: whether the statute was properly construed by the Commissioner to require the established name of the drug to be used *every time* the proprietary name is employed." 387 U.S. at 149, 87 S.Ct. at 1515. (Emphasis in original).

In *Standard Oil*, the Temporary Emergency Court of Appeals, was faced with a challenge to an interpretation of DOE regulations, which interpretation construed a regulation as requiring the use of a particular accounting method in the recovery of certain cost increases in order to determine the maximum lawful price for price-regulated products. As in *Abbott Laboratories*, there was no need for factual determinations, as it was clear that in all factual situations the regulations as interpreted by DOE required the use of the particular accounting method. The Court found that the issues presented were purely legal and further found that unless the Court took jurisdiction the legal questions would be left unadjudicated while the regulations would still apply with full force and effect. See *Standard Oil Company v. Department of Energy, supra,* 596 F.2d at 1039. Here, however, if the Court were to find in favor of the Plaintiffs on the question of the proper interpretation of the regulations, there would still remain for determination the construction of the contract in light of the Court's interpretation of the regulations. Should the Court endeavor to construe the contract, and thereby resolve the controversy, factual questions would likely be injected into this cause.[4] On the other hand, should the Court determine to avoid those factual issues and, having construed the regulations in accordance with Plaintiffs' construction, leave it to DOE to construe Plaintiffs' contract in light of the Court's construction of the regulations, this Court would also be avoiding resolution of the entire controversy which has been presented to it. The Court believes that the ripeness doctrine does not contemplate the Court's avoidance of clearly presented factual issues in an attempt to satisfy the first factor to be considered in a ripeness analysis. If the Court were to do so, although the legal questions would be adjudicated, the factual questions would remain unadjudicated, and it would not be clear with what force and effect the regulations would apply to these Plaintiffs. Avoidance of the factual issues by refusal to construe Plaintiffs' contract would mean that other ripeness factors would not be satisfied. Since it would be necessary for DOE to construe the contract, the issues presented would not be based upon final agency action. In addition, the litigation would not expedite final resolution of the issues. Finally, the Court's decision would make no change in Plaintiffs' potential liability for civil and criminal sanctions and for treble damages. That potential liability, and its impact on Plaintiffs' business would remain until Plaintiffs' contract had been construed.

The second factor for the Court's consideration in a ripeness analysis is whether the issues are based on final agency action.

4. It appears to the Court from Plaintiffs' Complaint, wherein they requested a declaration that VALERO is entitled to calculate its shrinkage costs on a BTU basis, that Plaintiffs are seeking this Court's construction of their contract.

Again, when Plaintiffs challenge the regulations as applied to their contract, the issues cannot be said to be based on final agency action. There is no question that the regulations in the formal interpretations are final agency action. However, as the Court has discussed above, Plaintiffs do not challenge those regulations and interpretations in a vacuum, but rather as they apply to Plaintiffs' contract. The only construction of the contract which has been performed by DOE is not final, since the appeal of the June 17 final decision and order has not been decided.

It does appear to the Court that Plaintiffs' challenge to the regulations and interpretations as applied to their contract satisfies the last two factors for ripeness. If the Court were to find in favor of the Plaintiffs with respect to the proper interpretation of the regulations and the contract, Plaintiffs would no longer face the potential liability for civil and criminal penalties and for treble damages. Although it is arguable that the potential liability here is not the kind of direct and immediate risk found in *Abbott Laboratories* and in *Standard Oil* in that it cannot be imposed without some determination of the meaning of the contract, it is clear that a determination of the meaning of the contract by the Court could remove the threat. It is also clear that a decision in favor of the Plaintiffs on the proper interpretation of the regulations and the contract would expedite final resolution of the controversy here.

It appears to the Court, from its examination of the issues presented, that those issues are not ripe for judicial review at this time. For that reason, the Court concludes that it has not been presented with a justiciable controversy, and it is therefore without jurisdiction. Because the Court is of the opinion that it is without jurisdiction in this cause, it sees no need to and will not address the issues of venue raised by the parties.

Therefore, IT IS HEREBY ORDERED that the above-styled and numbered cause be and is hereby DISMISSED.