## NORTH CAROLINA *v.* RICE

No. 70-77.   Argued October 12, 1971—Decided December 14, 1971

*Jacob L. Safron,* Assistant Attorney General of North Carolina, argued the cause for petitioner.   With him on the brief was *Robert Morgan,* Attorney General.   Joining in and adopting the brief were the Attorneys General for their respective States as follows: *Gary K. Nelson* of Arizona, *Ray Thornton* of Arkansas, *Robert L. Shevin* of Florida, *Theodore L. Sendak* of Indiana, *Vern Miller* of Kansas, *John B. Breckinridge* of Kentucky, *James S. Erwin* of Maine, *Francis B. Burch* of Maryland, *A. F. Summer* of Mississippi, *Robert L. Woodahl* of Montana, *Clarence A. H. Meyer* of Nebraska, *Helgi Johanneson* of North Dakota, *Crawford C. Martin* of Texas, *Vernon B. Romney* of Utah, and *Andrew P. Miller* of Virginia.

*William W. Van Alstyne* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* urging reversal were filed by *John W. Benoit, Jr.,* Deputy Attorney General, for the State of Maine, and by *Vernon B. Romney,* Attorney General, of Utah, *pro se.*

PER CURIAM.

On July 2, 1968, respondent Rice was arrested for driving while intoxicated on a North Carolina state highway. He was tried in the General County Court of Buncombe County, convicted, and sentenced to imprisonment for nine months with sentence suspended upon payment of $100 fine and costs. On appeal he was tried *de novo* in the Superior Court, found guilty, and sentenced to two years' imprisonment. State post-conviction procedures were unavailing. On appeal from denial of federal habeas corpus, the Court of Appeals for the Fourth Circuit held that under *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), "the more drastic sentence on the second trial [was] a denial of Federal due process, in that by discouragement it impinges upon the State-given appeal." 434 F. 2d 297, 300 (1970). Although "[h]e was completely discharged by North Carolina on January 24, 1970 . . . this did not moot the case on habeas corpus" because injurious consequences from the conviction might still obtain. *Ibid.* The judgment was that Rice' was entitled to have the record of his conviction expunged. The State's petition for writ of certiorari was granted. 401 U. S. 1008 (1971).

The State claims that *Pearce* does not apply to a situation where the more severe sentence is imposed after a trial *de novo* in its Superior Court. We do not reach that question, however, since the threshold issue of moot-

ness was improperly disposed of by the Court of Appeals. Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority. Early in its history, this Court held that it had no power to issue advisory opinions, *Hayburn's Case*, 2 Dall. 409 (1792), as interpreted in *Muskrat* v. *United States*, 219 U. S. 346, 351–353 (1911), and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. *Oil Workers Unions* v. *Missouri*, 361 U. S. 363, 367 (1960). To be cognizable in a federal court, a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240–241 (1937). However, "[m]oot questions require no answer." *Missouri, Kansas & Texas R. Co.* v. *Ferris*, 179 U. S. 602, 606 (1900). Mootness is a jurisdictional question because the Court "is not empowered to decide moot questions or abstract propositions," *United States* v. *Alaska S. S. Co.*, 253 U. S. 113, 116 (1920), quoting *California* v. *San Pablo & Tulare R. Co.*, 149 U. S. 308, 314 (1893); our impotence "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Liner* v. *Jafco, Inc.*, 375 U. S. 301, 306 n. 3 (1964). See also *Powell* v. *McCormack*, 395 U. S. 486, 496 n. 7 (1969). Even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction. *Henry* v. *Mississippi*, 379 U. S. 443, 447 (1965). *Liner* v. *Jafco, Inc., supra*, at 304.

The Court of Appeals held that the case was not moot because it assumed that *Pearce* mandated expunction of Rice's conviction and because the conviction, unexpunged, would have collateral consequences entitling Rice to challenge it. A number of disabilities may attach to a convicted defendant even after he has left prison,[1] and the Court has recognized the standing of such persons to challenge the legality of their convictions even when their sentences have been served.[2] It could not be clearer, however, that *Pearce* does not invalidate the conviction that resulted from Rice's second trial; *Pearce* went no further than to affirm the judgment of a federal court ordering Pearce's release "[u]pon the failure of the state court to *resentence* Pearce within 60 days . . . ." 395 U. S., at 714. (Emphasis added.) *Pearce,* in short, requires only resentencing; the conviction is not *ipso facto* set aside and a new trial required. Even if the higher sentence imposed after Rice's trial *de novo* was vulnerable under *Pearce,* Rice was entitled

---

[1] A convicted criminal may be disenfranchised, cf., *e. g.,* Mont. Const., Art. IX, § 2; Mont. Rev. Codes Ann. § 23–302 (1967); Okla. Const., Art. III, § 1; Okla. Stat. Ann., Tit. 26, § 93.1 (Supp. 1971–1972); lose the right to hold federal or state office, cf., *e. g.,* Del. Const., Art. 2, § 21; 18 U. S. C. § 204; be barred from entering certain professions, 7 U. S. C. § 12a (2)(B); D. C. Code Ann. §§ 47–2301 to 47–2350 (1967); be subject to impeachment when testifying as a witness, Ark. Stat. Ann. § 28–605 (1962); Ore. Rev. Stat. § 44.020 (1963); be disqualified from serving as a juror, Idaho Const., Art. 6, § 3, Idaho Code § 2–202 (1948); Nev. Const., Art. 4, § 27, Nev. Rev. Stat. § 6.010 (1967); and may be subject to divorce, W. Va. Code Ann. § 48–2–4 (Supp. 1971). See generally Comment, Civil Disabilities of Felons, 53 Va. L. Rev. 403 (1967); Note, The Effect of Expungement on a Criminal Conviction, 40 S. Cal. L. Rev. 127 (1967).

[2] *Pollard* v. *United States,* 352 U. S. 354, 358 (1957); *United States* v. *Morgan,* 346 U. S. 502, 512–513 (1954); *Fiswick* v. *United States,* 329 U. S. 211, 222 (1946); *Carafas* v. *LaVallee,* 391 U. S. 234, 237–240 (1968).

neither to have his conviction erased nor to avoid the collateral consequences flowing from that conviction and a proper sentence.

Respondent's sole claim under *Pearce* thus related to the sentence he had completely served when he came before the Court of Appeals. A different question of mootness is therefore presented than the Court of Appeals considered. Nullification of a conviction may have important benefits for a defendant, as outlined above, but urging in a habeas corpus proceeding the correction of a sentence already served is another matter. Respondent was first sentenced to nine months, suspended upon payment of a $100 fine; after trial *de novo* he was sentenced to two years. In some jurisdictions, if a defendant is adjudicated guilty, either by conviction or plea, and then is placed on probation, not sentenced, or given a suspended sentence, statutes imposing disabilities for criminal convictions have no application.[3] Elsewhere, however, the sentencing that follows adjudication of guilt is irrelevant for purposes of disability statutes.[4] Since the present record deals with the mootness question only from the standpoint of conviction *vel non* and is otherwise unilluminating as to whether there may be benefits to respondent under North Carolina law in having his sentence reduced after he has served that sentence, it would be inappropriate for us to deal with this issue as it has now emerged. Accordingly, we vacate the judgment of the Court of Appeals and remand the case to that court for reconsideration of the question of mootness.

*So ordered.*

Mr. Justice Douglas would affirm the judgment below on the opinion of the Court of Appeals in 434 F. 2d 297.

---

[3] See Special Project, The Collateral Consequences of a Criminal Conviction, 23 Vand. L. Rev. 929, 954 n. 97 (1970).

[4] *Ibid.*