Thomas **WOLFINGER**, Plaintiff,

v.

The **STANDARD OIL COMPANY**, Defendant.

No. C-2-75-490.

United States District Court, S. D. Ohio, E. D.

March 14, 1977.

930

Michael P. Graney, Michael K. Yarbrough, Porter, Stanley, Platt & Arthur, Columbus, Ohio, for plaintiff.

Michael W. Donaldson, Vorys, Sater, Seymour & Pease, Columbus, Ohio, Robert C. Maynard, Squire, Sanders & Dempsey, Richard J. Goetsch, Cleveland, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on plaintiff's motion for a reconsideration of the judgment in this proceeding entered January 14, 1977. Defendant has filed a memorandum in opposition to plaintiff's motion.

Plaintiff's second amended complaint was distilled into four basic claims, three of which were tried to a jury and one of which was tried to the Court on stipulated facts. Of the three claims tried to a jury, the Court entered a directed verdict in favor of the defendant on one at the close of plaintiff's evidence. The two remaining claims tried to a jury charged defendant with establishing certain tying arrangements and a retail price maintenance scheme and sought both damages and injunctive relief. A verdict for the defendant was returned on these claims and this Court entered judgment accordingly.

Plaintiff now asks that this Court reconsider its judgment on the tying arrangement claim and grant him the injunctive relief which he had originally sought. He asserts that this would not be inconsistent with the jury's adverse verdict, because he claims that the clear weight of the evidence supports a finding that there had indeed been a tying arrangement and that the jury's verdict could only have resulted from a finding that plaintiff was not damaged by this tying arrangement.

The basic tenet of plaintiff's reconsideration claim—that injunctive relief against a Clayton Act violation might still be available even though the plaintiff could not show a compensable injury to himself—was only recently reaffirmed by the Supreme Court. In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), the Court ordered the case remanded to determine the propriety of injunctive relief against a violation of Section 7 of the Clayton Act despite finding that the plaintiff-respondent could not recover damages. The Court's holding was predicated on the fact that the Clayton Act proscribes certain mergers in Section 7 but

sets forth the corresponding remedies in Sections 4 and 16. By parity of reasoning, if plaintiff here is correct, and the facts adduced at trial do indicate that there was a tying arrangement violative of Section 3, then the jury's verdict denying damages should not prevent this Court from awarding plaintiff the injunctive relief he seeks.

 Before addressing the substance of plaintiff's motion, however, it is necessary to consider two possible jurisdictional defenses which have been raised. The first of these questions plaintiff's standing to bring this action. Preliminarily, it might be observed that plaintiff is incorrect in asserting that defendant's failure to raise this issue at the pleading stage prevents interposing it now. The question of standing goes to a court's power to hear the case and may therefore be raised at any time. *See, e. g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 260–264, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

 In the instant proceeding the issue is quickly resolved. At the commencement of the action plaintiff was an active, independent service station operator dispensing defendant's gasoline, oil, and tires, batteries, and accessories [TBA]. His complaint alleged that the TBA were being sold to him subject to a tying arrangement. He quite clearly had standing to seek injunctive relief against the allegedly illegal arrangement. But plaintiff subsequently lost his dealership and he would not derive any personal benefit from a favorable decision on this motion. This Court must therefore decide whether standing once acquired may be lost as a result of events occurring after the filing of the action. This Court concludes that it cannot. The "gist of the question of standing" is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . ." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The use of the term "alleged" indicates that it is the pleadings which govern questions of standing and that subsequent events will not deprive a plaintiff of his standing to maintain an action already commenced. *See also* C. Wright, *Federal Courts* § 13 at 49 n. 31 (1976). Plaintiff's standing to bring this action—and inferentially to ask for injunctive relief on a motion for reconsideration—is not abated by his losing his dealership lease.

 A second question, to which plaintiff responded though it was not raised by defendant, is that of mootness. Does the fact that plaintiff is no longer subject to the tying arrangement which he contests and would not be affected by any equitable relief which this Court could provide moot his present demand for an injunction? This question, too, is jurisdictional. *See, e. g., DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *H. Hart & H. Wechsler, The Federal Courts and The Federal System* 110 (2d ed. 1973). Accordingly, this Court must consider the question despite defendant's failure to raise it.

 Superficially, it would appear that the case has become moot. Nothing this Court could presently offer in the way of equitable relief "[would] affect the rights of litigants in the case" before it. *DeFunis v. Odegaard, supra,* 416 U.S. at 316, 94 S.Ct. at 1705. But plaintiff points out that a case does not automatically become moot simply because contested conduct suddenly ceases, particularly if the cessation results from the unilateral conduct of the opposing party. *See Allee v. Medrano,* 416 U.S. 802, 809–10, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). Instead, the Court must look to whether there is a possibility that the complained of conduct will recur in a form which could be within the terms of a proper decree. *Id.* at 810–11, 94 S.Ct. 2191; *Hart & Wechsler, supra,* at 110–11. Under the facts of this case such a recurrence is highly doubtful. This Court certainly entertains no delusions that plaintiff might be voluntarily reinstat-

ed in his former position. That absolute termination would be sufficient to moot plaintiff's equitable claim.

Plaintiff, however, would contest any attempt to decide his motion based on a finding of mootness. Such action would reward the defendant by making defendant's unilateral actions the basis of a finding in its favor. It would also enable Sohio to prevail simply by terminating any intransigent dealer who sought to assert his rights in court. But plaintiff has overlooked the fact that there is now an intervening jury verdict which found, at the very least, that defendant's alleged tying arrangement did not cost plaintiff his lease. Whatever arguments may be made respecting the effect of an adversary's unilateral actions on mootness, they are simply irrelevant where a jury has subsequently found that the original conduct did not damage the plaintiff. To hold otherwise would be to contradict the jury's verdict. As for the supposed ease with which defendant may now terminate recalcitrant dealers, this Court would adopt defendant's argument that the interim relief of a temporary injunction is available to protect rights pending a full hearing. Accordingly, this Court concludes that plaintiff's claim for injunctive relief has been mooted by defendant's termination and the jury's verdict in this case. In the alternative, however, the Court will demonstrate that plaintiff must fail on his substantive claim as well.

As noted earlier, plaintiff's present claim for injunctive relief is premised on his conclusion that the evidence supporting the existence of a tying arrangement was so clear that a jury would not have been justified in finding otherwise. It would then logically follow that the jury's verdict against the plaintiff resulted from its finding that he was not damaged by the tying arrangement.

■ To some extent, plaintiff is correct. The evidence relating to the degree of market control over the tying product (gasoline) and the amount of commerce affected by the tie (assuming it were found to exist) was not seriously contradicted by the defendant. But these two tests are not applied unless and until a tying arrangement has been found to exist, and it is here that plaintiff's argument breaks down.

■ The contested provision of the Dealer Lease and Supply Agreement, paragraph 8, reads as follows:

SUPPLY OF PRODUCTS. Dealer agrees to buy and diligently promote the sale of and Standard agrees to sell and deliver at the Station such quantities of (a) Standard's petroleum products and (b) Standard's tires, tubes, batteries and automobile accessories (collectively "TBA"), of the grades, brands, and kinds generally sold by Standard to like retail dealers in the same area, as are required to meet the customer demand for Standard's petroleum products and TBA at the station. All deliveries shall be made in Standard's customary manner with minimum quantities per delivery as specified by Standard.

It is clear that this paragraph does not expressly tie the purchase of gasoline to the purchase of TBA. For plaintiff to prevail, therefore, there must be an implied tying arrangement, which achieves the same result.

■ This Court extensively instructed the jury on the law pertaining to implied tying arrangements. Its instruction " 'Tying Arrangement' Defined" contained the following language:

A tying arrangement may be found to exist even though it is not expressly written into an agreement and even though it may not always be enforced. A tying arrangement may also be found to exist even though the tied product may, under specified circumstances, also be purchased from another source. However, in order for a tying arrangement to exist, there must be some element of coercion. It is not sufficient to find that the seller was economically dominant and that it persuaded the buyer to purchase the tied product.

In distinguishing between persuasion and coercion, you should look to the voluntari-

ness of the buyer's purchase. Thus, if you should find in this case that the plaintiff purchased Atlas TBA of his own free will, then there is no tying arrangement even though the defendant's employees may have pointed out various benefits which might accrue from stocking Atlas TBA. But if you find that plaintiff purchased Atlas TBA because he had been led to believe by employees of Sohio that Sohio would discontinue gasoline sales to dealers who wouldn't purchase Atlas TBA, then you may find that there was a tying arrangement.

This instruction reflected the Court's conclusion that some showing of coercion is required where the tying arrangement is implied rather than express. *See, e. g., Ungar v. Dunkin' Donuts of America, Inc.,* 531 F.2d 1211, 1218–22 (3d Cir. 1976); *Davis v. Marathon Oil Co.,* 528 F.2d 395, 398 (6th Cir. 1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). Whether or not plaintiff was coerced was, perforce, a question of fact to be determined by the jury. Since the jury returned a verdict for the defendant, this Court must assume that it found for the defendant on the question of coercion. Accordingly, there was no tying arrangement, despite the market control which plaintiff concededly established. This means that the predicate necessary to the granting of plaintiff's requested injunctive relief has not been established, and plaintiff's request must be denied.

WHEREUPON, this Court finds that plaintiff's motion for a reconsideration of the judgment entered against him in this proceeding is not meritorious and it is accordingly DENIED.