Arlene VIOLET, et al.,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.

Civ. A. No. 85–0749 P.

United States District Court, D. Rhode Island.

Jan. 22, 1987.

Susan B. Squires, Dept. of the Atty. Gen., Providence, R.I., for plaintiff.

Michael A. McCord, Environmental Defense Section, U.S. Dept. of Justice, Washington, D.C., Lee R. Tyner, Office of Gen. Counsel, U.S. Environmental Protection Agency, Washington, D.C., David L. Markell, Office of Regional Counsel, U.S. Environmental Protection Agency, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiffs in this case, the State and the Attorney General of Rhode Island (collectively referred to hereinafter as "the State"), brought this action for declaratory and injunctive relief seeking to have this Court declare unlawful and set aside certain remedial actions which the defendant Environmental Protection Agency ("EPA") proposed for implementation at the Picillo hazardous waste site in Coventry, Rhode Island. Specifically, the State objects to the EPA's plan to dispose of chemical-laden soil at a landfill on-site at the Picillo farm. Currently before this Court is the EPA's motion to dismiss this case on the ground that legislative enactments have rendered this case moot. The EPA contends that the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, 100 Stat. 1613 ("the Superfund Amendments"), signed into law on October 17, 1986, have mooted the controversy between the par-

ties. The plaintiffs concede that the Superfund Amendments have rendered moot an important aspect of this case, but argue the existence of "live" controversies between the parties which require court adjudication.

## FACTUAL BACKGROUND

On or about September 30, 1985, Michael R. Deland, Regional Administrator of Region I of the EPA and a named defendant in this action, issued the Record of Decision ("ROD") for the Picillo hazardous waste site in Coventry, Rhode Island. The Record of Decision outlined the EPA's choice of remedial measures to be undertaken at the Picillo site, a hazardous waste repository listed on the EPA's National Priorities List and subject to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9651 (1982), commonly known as "Superfund." Among many remedial measures proposed in the ROD, the EPA ordered that soils contaminated with polychlorinated biphenyls ("PCBs") and phenols be disposed of at a landfill at the Picillo property.

The State has contested the EPA's decision to dispose of the PCB-contaminated soil at the Picillo site. The State contends that the groundwater elevation at the Picillo site makes on-site landfill of the contaminated soil an inappropriate mode of disposal. The plaintiffs further object to the on-site disposal of the PCB-laden soil on the grounds that such a disposal method is not technologically feasible and reliable, will not effectively minimize damage or provide adequate protection to the public health, welfare or environment, and will force the State of Rhode Island to incur long-term costs and responsibilities in connection with the maintenance of the landfill. The State has proposed an alternative, off-site disposal plan for the PCB-contaminated soils, and asks this Court to declare the EPA's on-site disposal plan unlawful and to order the defendants to select a remedial plan for the soil which would comport with state and federal law.

Prior to a final decision in this matter, Congress enacted the Superfund Amendments which the President signed into law on October 17, 1986. The defendants interpret section 121(d)(2)(C)(iv) of the Amendments to require the EPA to conform its remedial actions at the Picillo site to the conflicting state standard. The defendants concede the lack of continuing validity of the ROD as it relates to the PCB-contaminated soil, and they urge this Court to dismiss this action as moot.

The plaintiffs have opposed dismissal of this case, and argue the continuing existence of "live" controversies pertaining to the disposal of the PCB-contaminated soils currently found at the Picillo farm. The State argues that the nature of the remedy, funding for the selected remedy and whether the remedy will be consistent with the National Contingency Plan so as to permit cost recovery from parties held liable for waste deposited at the site remain in contest. In response to the plaintiffs' contentions, the defendants argue that any challenge to the EPA's remedial actions proposed for the Picillo site are not ripe for review and that the State must await final agency action before any challenge to the EPA's remedial measures may be brought.

## DISCUSSION

█ Jurisdiction granted to the federal courts under Article III of the United States Constitution limits the federal courts to adjudicating "cases" and "controversies," a concept which the United States Supreme Court has noted embodies two "complementary but somewhat different limitations." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968). The "cases" and "controversies" requirement limits federal court inquiry to those issues presented "in an adversary context and in a form historically viewed as capable of resolution through the judicial process" and it also defines the role assigned to the judiciary in our three-part system of government, ensuring that the courts do not intrude into areas within the ambit of the legislative or executive branches. *Flast v. Cohen,* 392 U.S. 83, 95,

88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395–96, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

The concept of mootness derives from the Article III requirement that federal courts are limited to adjudicating "cases" and "controversies," and stands for the proposition that federal courts are without power to decide questions which cannot affect the rights of the litigants before them. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Mootness generally involves a two-part inquiry: whether the issues between the parties are "live" and whether the parties maintain "a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). Mootness is generally recognized when subsequent acts intervene to eliminate a party's interest in the outcome of the litigation. *See Boston Chapter, NAACP v. Beecher,* 716 F.2d 931, 932 (1st Cir.1983), *vacated and remanded,* 468 U.S. 1206, 104 S.Ct. 3576, 82 L.Ed.2d 874 (1984), *reaff'd,* 749 F.2d 102 (1st Cir.1984), *cert. denied,* 471 U.S. 1075, 105 S.Ct. 2154, 85 L.Ed.2d 510 (1985).

■ The EPA contends that the passage of section 121(d)(2)(C)(iv) of the Superfund Amendments is just such a subsequent development. This provision states:

Where the remedial action selected by the President does not conform to a State standard and the State has initiated a law suit against the Environmental Protection Agency prior to May 1, 1986, to seek to have the remedial action conform to such standard, the President shall conform the remedial action to the State standard. The State shall assure the availability of an off-site facility for such remedial action.

Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499 § 121(d)(2)(C)(iv), 1986 *U.S.Code Cong. & Ad.News* (100 Stat.) 1613. As the EPA has noted, this appears, on its face, to apply to this litigation. This suit was instituted pri-

or to May 1, 1986, the State has challenged a remedial action which did not conform to a state standard, and the State seeks to compel the EPA to conform its remedial action to the State standard. An examination of the legislative history accompanying this amendment indicates that the Amendment was specifically directed at this litigation.

The House Conference Report accompanying the Superfund Reauthorization bill states that, "[Section 121(d)(2)(C)] (iv) requires the President to conform the remedial action at the Picillo Pig Farm site, Rhode Island, to the State standard." H.R.Conf. Rep. No. 962, 99th Cong. 2d Sess. 247 (1986), *reprinted in* 1986 *U.S.Code Cong. & Ad.News* 2835, 3276, 3340. Similar sentiments were expressed in the Senate debate on the reauthorization bill:

In the context of this provision, EPA will be required to remove contaminated dirt at the Picillo dump site in Coventry. This provision was added at my insistence after the State of Rhode Island was forced by EPA to go to court last December in an effect [sic] to get EPA to remove the contaminated dirt.

132 Cong.Rec. S14924 (col. 1) (daily ed. Oct. 3, 1986) (remarks of Senator Chafee). There can be no doubt that Congress intended this amendment to govern the selection of remedial action at the Picillo site, and to the extent that the plaintiffs' suit challenges the ROD which the EPA issued in connection with such action, the Superfund Amendments have rendered the litigation moot. The Superfund Amendments have supplanted the statutory basis for the preparation of the EPA's original ROD and section 121(d)(2)(C)(iv) of the amendments requires the EPA to conform the contested remedial actions to the standards propounded by the State of Rhode Island.

The plaintiffs' insistence that this case involves more than the question of the proper disposal of the PCB-contaminated soil is not supported by the pleadings which the State has filed in this case. Paragraph 17 of the State's complaint avers that, "The State has concurred with the remedies

specified in the R.O.D. except for the on-site disposal of the PCB contaminated soil." (Complaint at 4). Moreover, the plaintiffs' requested relief specified that this Court "hold unlawful and set aside the defendants' decisions to dispose of the PCB contaminated soils at the Picillo site," and that this Court "[o]rder the defendants to select a remedial action for the PCB contaminated soils which is in accordance with State and federal law, specifically CERCLA, [the Toxic Substances Control Act], the Rhode Island Hazardous Waste Management Act and rules and regulations promulgated thereunder." (Complaint at 6). I do not read the plaintiffs' requests for relief to include the issues which the State contends remain "live" between the parties, namely, the precise nature of the remedy which the EPA must implement, the cost allocation of the remedy between the state and federal authorities and the consistency of the remedy with the National Contingency Plan. As I understand the Complaint, the State sought to compel the EPA to follow the State's remedial plan for the PCB-contaminated soil and it is my interpretation of the Superfund Amendments that Congress has granted the relief the plaintiffs had requested.

Even if I were to accept the State's assertion that issues bound up with this litigation were not rendered moot by the passage of the Superfund Amendments, I do not believe that this Court may adjudicate those issues at this time because they are not currently ripe for judicial review. As outlined by the Supreme Court, to determine the ripeness of an administrative action for judicial review, a court must inquire into 1) whether the statute under which review is sought prohibits judicial review; 2) "the fitness of the issues for judicial decision"; and 3) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–40, 149, 87 S.Ct. 1507, 1510, 1515, 18 L.Ed.2d 681 (1967).

▮ The problem in this instance is not that the EPA's action fails to meet this test for ripeness, but rather, that there has been no agency action to which the test may be applied. The Superfund Amendments invalidated the basis for the ROD as it applied to the PCB-contaminated soil and until the EPA promulgates a new remedial plan pursuant to the Superfund Amendments, the State has no administrative action to challenge. Indeed, the affidavit of Thomas Getz, Chief of the Division of Air & Hazardous Materials for the Rhode Island Department of Environmental Management, filed by the plaintiffs states, "My understanding is that EPA has not decided what the new Superfund requires it to do at the Picillo site." (Affidavit of Thomas Getz at 2). Until the EPA makes such a decision or refuses to make a decision with regard to the Picillo site which the law requires it to make, there is no administrative action which the State may challenge. While the State may fear the inadequacy of the EPA's response to the CERCLA Amendments, "[t]he mere *potential* for future injury ... is insufficient to render an issue ripe for review." *Alascom, Inc. v. FCC*, 727 F.2d 1212, 1217 (D.C.Cir.1984) (emphasis in original). While the plaintiffs would have this Court, in essence, oversee the negotiations between the State and the EPA concerning the disposal of the PCB-contaminated soil, such judicial interference in the agency's administrative processes contravenes the accepted limits of judicial review of agency actions. As the Supreme Court has stated with regard to the ripeness doctrine:

> [I]t is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

## CONCLUSION

Section 121(d)(2)(C)(iv) of the Superfund Amendments of 1986 has eliminated the

issues pending resolution in this case and has rendered the controversy moot. Therefore, the defendants' motion to dismiss this case on mootness grounds is hereby granted. All motions pending resolution in this matter are hereby dismissed. The parties shall bear their own litigation costs, including attorneys' fees.