**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1312**

———————

NUVOX COMMUNICATIONS, INCORPORATED,

Plaintiff - Appellant,

and

NEWSOUTH COMMUNICATIONS CORPORATION,

Plaintiff,

versus

JO ANNE SANFORD, Chairman; J. RICHARD CONDER,
Commissioner; ROBERT V. OWENS, JR.,
Commissioner; SAM J. ERVIN, IV, Commissioner;
LORINZO L. JOYNER, Commissioner; JAMES Y.
KERR, II, Commissioner; MICHAEL F. WILKINS,
Commissioner (in their official capacities as
Commissioners of the North Carolina Utilities
Commission); BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,

Defendants - Appellees,

and

NORTH CAROLINA UTILITIES COMMISSION,

Defendant.

———————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  W. Earl Britt, Senior
District Judge.  (5:05-cv-00207-BR)

Argued:  November 29, 2006          Decided:  July 12, 2007

Before MICHAEL and SHEDD, Circuit Judges, and David A. FABER, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Judgment vacated and appeal dismissed as moot in part and not ripe in part by unpublished per curiam opinion.

**ARGUED:** Robert Jeffery Aamoth, KELLEY, DRYE & WARREN, L.L.P., Washington, D.C., for Appellant.  Karen Elizabeth Long, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina; Edward Smoot Finley, Jr., HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellees.  **ON BRIEF:** Henry J. Campen, Jr., Melanie Black Dubis, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina; John J. Heitmann, Stephanie A. Joyce, KELLEY, DRYE & WARREN, L.L.P., Washington, D.C., for Appellant.  Roy Cooper, North Carolina Attorney General, Grayson G. Kelley, Chief Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees, Commissioners.  Christopher J. Ayers, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellee BellSouth Telecommunications, Incorporated.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

For the reasons explained below, we vacate the judgment of the district court and dismiss this appeal as moot in part and not ripe in part.

## I.

This case involves a dispute between BellSouth Telecommunications, Inc. (BellSouth) and NuVox Communications, Inc. (NuVox) regarding the terms on which BellSouth can audit NuVox's use of certain telephone network elements called Enhanced Extended Links (EELs). NuVox uses EELs of BellSouth pursuant to two different interconnection agreements between the carriers. (We will at times refer to one of the agreements as the NuVox Agreement and the other as the NewSouth Agreement.) Both agreements allow NuVox to convert higher-cost special access circuits to lower-cost EELs provided that NuVox self-certify that it is using the circuits to provide a "significant amount of local exchange service" as defined by the Federal Communications Commission (FCC). J.A. 166, 731. When certain conditions are met, both the NuVox and NewSouth Agreements grant BellSouth the right to audit NuVox to ensure that it is complying with the local usage requirements.

Plaintiff-appellant NuVox filed a verified complaint in the district court on March 28, 2005, against defendants-appellees BellSouth and the commissioners of the North Carolina Utility

Commission (NCUC) in their official capacities, seeking relief from three orders issued by the NCUC in 2004 and 2005. In the first of the three orders at issue, the NCUC decided that BellSouth was entitled to conduct an audit (the NewSouth audit) of EELs use under the terms of the NewSouth Agreement. In the Matter of BellSouth Telecomms., Inc. v. NewSouth Commc'ns, Corp., Order Granting Summary Disposition and Allowing Audit, Docket No. P-772, Sub 7 (Aug. 24, 2004). In the second order the NCUC denied a motion to reconsider its order authorizing the NewSouth audit. Id., Order Denying Motion for Reconsideration, Docket No. P-772, Sub 7 (Jan. 20, 2005). The third order issued by the NCUC authorized BellSouth to conduct an audit (the NuVox audit) on EELs use under the NuVox Agreement. In the Matter of the Enforcement of Interconnection Agreement Between BellSouth Telecomms., Inc. and NuVox Telecomms., Inc., Order Granting Motion for Summary Disposition and Allowing Audit, Docket No. P-913, Sub 7 (Feb. 21, 2005).

In its complaint in the district court, NuVox sought declaratory and injunctive relief with respect to the three NCUC orders. NuVox alleged that the NCUC had misinterpreted the terms of both interconnection agreements in authorizing the audits. Specifically, NuVox asserted that federal law incorporated into the agreements requires: (1) that BellSouth "demonstrate a concern" prior to being authorized to audit and (2) that NuVox be allowed to

4

challenge the independence of an auditor before an audit is initiated.

The district court did not reach the merits of the dispute because it concluded that NuVox's complaint does not arise under federal law. As a result, the court dismissed the complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1331. NuVox appealed, arguing that a substantial question of federal law is raised by the issue of whether the NCUC's interpretation of the interconnection agreements resulted in the denial of what NuVox asserts are federal rights. NuVox argues in the alternative that the district court had subject matter jurisdiction under Section 252(e)(6) of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56, codified at 47 U.S.C. § 251 et seq.

On March 27, 2007, after the case had been argued before this court, NuVox submitted a Fed. R. App. P. 28(j) Notice of Supplemental Authority, informing us of an FCC decision issued the day before that bears on this appeal. The FCC issued a Memorandum Opinion and Order on March 26, 2007, approving of the merger of BellSouth with AT&T. FCC approval of the merger was contingent upon a number of conditions including the requirement that:

> AT&T/BellSouth shall cease all ongoing or threatened audits of compliance with the Commission's EELs eligibility criteria (as set forth in the Supplemental Order Clarification's significant local use requirement and related safe harbors, and the Triennial Review Order's high capacity EEL eligibility criteria), and shall not initiate any new EELs audits.

5

In the Matter of AT&T Inc. and BellSouth Corp. Application for Transfer of Control, WC Docket No. 06-74, Memorandum Opinion and Order, Appendix F at 149 (Mar. 26, 2007) (FCC Merger Order).  In its Rule 28(j) notice NuVox asserted that this merger condition renders as moot the disputes surrounding both the NuVox audit and the NewSouth audit.  We requested and received supplemental briefing on the issues of mootness and ripeness from the parties, and we turn now to those issues.

## II.

Federal courts have no jurisdiction to decide moot questions.  Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003).  Because of the case or controversy requirement found in Article III of the Constitution, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."  De Funis v. Odegaard, 416 U.S. 312, 316 (1979) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

Both NuVox and BellSouth assert that the appeal of the NCUC's February 21, 2005, order in Docket P-913 authorizing the NuVox audit is moot.  Although the NCUC authorized an audit under the NuVox Agreement more than two years ago, BellSouth never began the audit as a result of an injunction issued by the district court in this case.  As a result, on February 16, 2007, BellSouth and NuVox filed a joint motion in NCUC Docket P-913 requesting that the

6

NCUC vacate its February 2005 order. BellSouth and NuVox stated the dispute arising from that order "is moot because BellSouth had neither commenced nor completed the audit it was allowed to conduct under the [Feb. 21, 2005] Order and the [FCC] merger condition bars BellSouth from proceeding with that audit." In light of the fact that BellSouth no longer seeks to enforce the February 2005 order in NCUC Docket P-913, we agree that this appeal as it relates to that order has been mooted.

While the parties agree that a portion of this appeal is moot, they contest the effect of the FCC Merger Order on the NCUC orders issued in Docket P-772 interpreting the NewSouth Agreement. In contrast to what occurred after the NCUC issued its ruling in Docket P-913, NuVox did not seek an injunction barring BellSouth from beginning the NewSouth audit authorized in Docket P-772. As a result, the auditor contracted by BellSouth released its findings on the NewSouth audit on November 11, 2004.

BellSouth contends that the NewSouth audit was concluded when the auditor released its findings. NuVox argues that the record before us shows that the audit was never completed because the auditor's report includes a "placeholder" exhibit for a letter needed from NuVox that NuVox has not supplied. See NuVox's Supplemental Br. at 14-15, Appendix E. According to NuVox, the letter could not be drafted because the auditor has never reviewed and verified the results found with NuVox. The dispute between the

7

parties over the significance of the missing letter and of the audit verification procedures in general is of considerable importance because those questions may determine whether or not the FCC Merger Order moots any dispute about the audit authorized in Docket P-772.

As a result of this dispute, we conclude that the issues in this appeal relating to the NCUC's August 2004 and January 2005 orders in Docket P-772 are not ripe for review. Drawn from both Article III limitations and prudential considerations, ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication from entangling themselves in abstract disagreements." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985). "To determine whether the case is ripe, we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (internal quotation omitted).

We have previously explained that a case "is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992). This is not the situation here. To determine whether there is still a

8

justiciable controversy between the parties, we would first have to decide whether the NewSouth audit has already been completed. Underlying this question are several disputed factual and legal issues. It is not within our province, however, to settle the factual disputes surrounding the audit verification procedures.

Furthermore, the considerations that favor withholding review are not outweighed by any hardship that dismissing the appeal may cause the parties. Significantly, we conclude that dismissal for lack of ripeness will not prevent NuVox from raising the same issues in the future should the appropriate trier of fact determine that there remains a live dispute surrounding the NewSouth audit. Another proceeding involving the NewSouth audit is currently pending before the NCUC in its Docket P-1341, Sub 1. On September 22, 2006, BellSouth filed a complaint under that docket number asserting that the audit report released on November 11, 2004, shows that NuVox has breached the local usage requirements in the NewSouth Agreement. The complaint in Docket P-1341 is based on the NewSouth audit authorized by the NCUC in Docket P-772. Just as it has before this court, NuVox has argued to the NCUC that the NewSouth audit has never been completed. Thus, NuVox has urged the NCUC to determine that the FCC Merger Order moots BellSouth's complaint in Docket P-1341. For its part, BellSouth has argued that the Merger Order is inapplicable to the proceeding in Docket P-1341 and that NuVox's argument to the contrary must first be

9

adjudicated by the FCC and not the NCUC. This is so, BellSouth argues, because the FCC retains exclusive jurisdiction to interpret and enforce conditions contained in the Merger Order. The NCUC has not ruled on these questions and has placed the proceedings in Docket P-1341 in abeyance pending the outcome of this appeal.

We take no position at this point on whether the FCC or the NCUC is the appropriate agency to determine these matters in the first instance. At any rate, only after a threshold determination has been made as to whether the NewSouth audit was completed, or is instead ongoing or threatened, will it be clear whether BellSouth can maintain its complaint in Docket P-1341. If the FCC Merger Order has mooted the proceedings in Docket P-1341, NuVox would have no need to seek any sort of relief from the federal courts in relation to the NewSouth audit. If, however, the FCC Merger Order has not mooted the proceedings in Docket P-1341, and the NCUC ultimately rules in favor of BellSouth/AT&T, NuVox could challenge that decision in federal court on the same grounds that it challenged the orders issued in Docket P-772. Accordingly, we vacate the district court's judgment that NuVox's complaint in this case does not raise a federal question, and we then dismiss the present appeal. In vacating the judgment of the district

10

court, we are offering no opinion on the merits of the jurisdictional questions that were raised and may again be raised in a future action.

<u>JUDGMENT VACATED AND</u>
<u>APPEAL DISMISSED AS MOOT IN PART</u>
<u>AND NOT RIPE IN PART</u>