Mark FRENCH, Plaintiff,

v.

Edward McLEAN, in his official capacity as Chair of Montana's Judicial Standards Commission; Blair Jones, in his official capacity as a member of Montana's Judicial Standards Commission; Victor Valgenti, in his official capacity as a member of Montana's Judicial Standards Commission; John Murphy, in his official capacity as a member of Montana's Judicial Standards Commission; Sue Schlief, in her official capacity as a member of Montana's Judicial Standards Commission, Defendants.

No. CV 14–57–GF–SEH.

United States District Court,
D. Montana,
Great Falls Division.

Signed Oct. 6, 2014.

Matthew G. Monforton, Monforton Law Offices, Bozeman, MT, for Plaintiff.

Andres Haladay, Agency Legal Services Bureau, Helena, MT, for Defendants.

## ORDER

SAM E. HADDON, District Judge.

### Background

This case challenges, on First Amendment grounds, Montana Judicial Code of Conduct Rule 4.1(A)(7).[1] Plaintiff Mark

<hr/>

1. (*See* Doc. 5–1 at 45 (2008 Montana Code of Judicial Conduct Rule 4.1(A)(7) states: "Except as permitted by law,* or by Rules 4.2, 4.3, and 4.4, a judge or judicial candidate* shall not: ... (7) seek, accept, or use endorsements from a political organization, or parti-

French ("French") is a candidate for Sanders County Justice of the Peace in the 2014 general election.[2] He seeks to use endorsements from the Sanders County Republican Central Committee ("SCRCC") and from public officials and other candidates for public office during his judicial campaign.[3] It is Rule 4.1(A)(7)'s prohibition against such conduct by candidates for nonpartisan judicial office French seeks to enjoin.[4]

A Motion for Preliminary Injunction was filed on August 26, 2014.[5] The motion was opposed.[6] Six of seven individually-named Justices of the Montana Supreme Court appeared as amici curiae.[7] A hearing was held on October 1, 2014. The Motion for Preliminary Injunction was DENIED. This Order supplements the Court's statement of reasons for its ruling stated on the record at the time of the hearing.

### Issue

The core question addressed and resolved at the hearing was whether the preliminary injunction requested should be entered.

### Discussion

 Issuance of a preliminary injunction is governed by Fed.R.Civ.P. 65. Such injunctions may be issued only upon notice to the adverse party. Expedited consideration is expected. In addition, the Court is to issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."[8] Although no party even raised the issue of security, the rule is not to be ignored. However, the Court finds it unnecessary to address the deficiency at this point.

The parties disagree as to the type of preliminary injunction sought by the Plaintiff. French asserts he seeks a prohibitory injunction preserving the status quo of "not being disciplined by Defendants."[9] Defendants counter that the injunction sought is, in substance, mandatory, and would "upset[ ] the status quo and mandate[ ] a specified course of conduct."[10]

 The 9th Circuit recognizes two different legal standards for preliminary injunctions. The movant must meet one of the two.[11] A Plaintiff seeking a preliminary injunction either must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public inter-

---

san or independent non-judicial office-holder or candidate."); *see also* 46–51 (Rule 4.1(A)(7) Comments [1]-[15] ). The Montana Supreme Court adopted the 2008 Montana Judicial Code of conduct on December 12, 2008.)

2. (*See* Doc. 1 at 4.)

3. (*See* Doc. 1 at 4–5; SCRCC is the Republican Party's county-level organization for Sanders County.)

4. (*See* Doc. 1.)

5. (*See* Fed.R.Civ.P. 65; Docs. 3, 4.)

6. (*See* Doc. 17.)

7. (*See* Doc. 16; participating are the Honorable Mike McGrath, Honorable Jim Rice, Honorable Michael E. Wheat, Honorable Patricia Cotter, Honorable Beth Baker, and Honorable James Jeremiah Shea; Honorable Laurie McKinnon is not participating.)

8. Fed.R.Civ.P. 65(c).

9. (Doc. 20 at 3.)

10. (Doc. 17 at 4.)

11. *See Stanley v. University of S. Cal.,* 13 F.3d 1313, 1320 (9th Cir.1994).

est.[12] Alternatively, the moving party must "demonstrate[ ] *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor."[13] Under the latter standard, a court should also consider the effect of the preliminary injunction on the status quo.[14]

French argues he is seeking to preserve the status quo by preventing or enjoining the Montana Judicial Standards Commission ("Commission") if he were to violate Rule 4.1(A)(7). He equates status quo with a lack of disciplinary action.[15] However, he has not presently violated the Rule.[16] He is a candidate, not yet an office holder.[17] He has not been charged with any violation and has not been subjected to disciplinary action by the Commission or the Montana Supreme Court.[18] This factual scenario strongly suggests there is no existing controversy for the Court to resolve and that no issue is ripe for resolution.[19] If such were the case, any ruling would be, in substance, an inappropriate advisory opinion on a hypothetical issue.[20]

Standing issues aside, it is clear French, notwithstanding his choice of language, seeks to go beyond preserving the status quo. In reality, he seeks to enjoin enforcement of Rule 4.1(A)(7) outright. Such relief, if granted, would require the Commission to act in a particular way to ignore the rule entirely and not apply it to the Plaintiff. Such an outcome clearly disrupts the status quo and would allow the Plaintiff to seek and use partisan endorsements, as well as endorsements from public officials and other candidates for public office. The whole electoral process for judicial elections currently in place would be disrupted.

■ Mandatory injunctions are particularly disfavored.[21] The Court is to act with extreme caution in considering a mandatory injunction request "that goes well beyond maintaining the status quo."[22] To justify such action, the facts and the law

---

**12.** *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24–25, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

**13.** *Stanley*, 13 F.3d at 1319.

**14.** *See Stanley*, 13 F.3d at 1319.

**15.** (*See* Doc. 20 at 3.)

**16.** (*See* Doc. 1 at 5.)

**17.** (*See* Doc. 1 al 4.)

**18.** (*See* Docs. 1 at 4–5 (French as a candidate is unwilling to seek the SRCC's endorsement because of Rule 4.1(A)(7)'s prohibition on soliciting political party endorsements); 16 at 2 (Commission can investigate complaints alleging violations and makes recommendations to the Montana Supreme Court if it finds allegations to be true).)

**19.** (Doc. 1 at 6 ("The Montana Judicial Commission threatens to discipline any judicial candidate who violates the Code and is subsequently elected.").)

**20.** U.S. Const., art. III (federal courts cannot give advisory opinions; a case or controversy must exist wherein the court can provide relief and not just opine what the law would be under hypothetical circumstances); *see also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (federal courts have "no power to issue advisory opinions"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical' ") (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (justiciability requires an actual or imminent injury).

**21.** *See Stanley*, 13 F.3d at 1320 (citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1979)).

**22.** *Stanley*, 13 F.3d at 1319–20.

must clearly favor the moving party, and the Court must apply the heightened scrutiny standard in deciding the issue.[23]

On the record before the Court, Plaintiff has not made the requisite "clear showing" under *Winter*[24] to justify an upset of the status quo or to mandate implementation of an uncharted course of conduct by the Commission. The facts and the law do not clearly favor the Plaintiff's position. For these reasons alone, a preliminary injunction at this time is not appropriate.

■ Alternatively, if the Court were to adopt the Plaintiff's position for the applicable standard and construe the requested relief as preserving the status quo, the Plaintiff must still make a "clear showing that [he] is entitled to such relief."[25] All four requirements must be present.[26] A preliminary injunction is "never awarded as of right."[27] Instead, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[28]

■ Content-based restrictions on political speech and association are subject to strict scrutiny.[29] A restriction on speech will be upheld if the state can show "a compelling state interest" and the restriction is "narrowly tailored."[30] The United States Supreme Court has left open the question of whether "the First Amendment requires campaigns for judicial office to sound the same as those for legislative office."[31]

Judicial integrity is a state interest of the highest order and judicial "codes of conduct serve to maintain the integrity of the judiciary and the rule of law."[32] The Ninth Circuit has acknowledged "that Montana has a compelling interest in maintaining a fair and independent judiciary."[33] The United States Supreme Court has previously "upheld a narrow class of speech restrictions that operate to the disadvantage of certain persons ... based on an interest in allowing governmental entities to perform their functions."[34] "The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."[35]

---

**23.** *See Stanley*, 13 F.3d at 1320 (citations omitted).

**24.** *Winter*, 555 U.S. at 22, 129 S.Ct. 365 (citation omitted).

**25.** *Winter*, 555 U.S. at 22, 129 S.Ct. 365 (citation omitted).

**26.** *Winter*, 555 U.S. at 20, 129 S.Ct. 365.

**27.** *Winter*, 555 U.S. at 24, 129 S.Ct. 365 (citation omitted).

**28.** *Winter*, 555 U.S. at 24, 129 S.Ct. 365 (citation omitted).

**29.** *See Sanders County Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 745 (9th Cir.2012).

**30.** *See Republican Party of Minnesota v. White*, 416 F.3d 738, 749, 750–52 (8th Cir. 2005); *Citizens United v. Fed. Election*

*Comm'n*, 558 U.S. 310, 312, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

**31.** *Republican Party of Minnesota v. White*, 536 U.S. 765, 783, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (neither asserting nor implying such a requirement; but even if the First Amendment does allow greater regulation of judicial election campaigns than legislative campaigns, regulations must still pass strict scrutiny).

**32.** *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 889, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

**33.** *Sanders County*, 698 F.3d at 746.

**34.** *Citizens United*, 558 U.S. at 341, 130 S.Ct. 876 (citations omitted).

**35.** *Mistretta v. U.S.*, 488 U.S., 361, 407, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (consider-

"In short, the seriousness with which the regulation of core political speech is viewed under the First Amendment requires such regulation to be as precisely tailored as possible." [36] "A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." [37] Strict scrutiny, as noted, is required.

Plaintiff relies on *Sanders County Republican Central Committee v. Bullock,* 698 F.3d 741 (9th Cir.2012). There, the Ninth Circuit struck down a statute making "it a criminal offense for any political party to 'endorse, contribute to, or make an expenditure to support or oppose a judicial candidate.'" [38] The Court found that "Montana lack[ed] a compelling interest in forbidding political parties from endorsing judicial candidates" and that the statute was not narrowly tailored.[39] It pointed out that Montana's error was to suppose that preventing political parties from endorsing judicial candidates was necessary to maintain a fair and independent judiciary without offering evidence in support. Nonetheless, the Court recognized "that Montana has a compelling interest in maintaining" an independent, fair judiciary.[40]

The circumstances in this case vary from those in *Sanders County.* A criminal statutory provision which improperly restricted the speech of political parties cannot be equated with Montana Code of Judicial Conduct Rule 4.1(A)(7), which limits judicial candidates in nonpartisan elections from seeking partisan political party endorsements for use during a campaign. This case concerns the election of judicial officers, not the speech of political parties.

The 2008 Montana Code of Judicial Conduct "establishes standards for the ethical conduct of judges and judicial candidates" in recognition of the fact that "the judiciary plays a central role in preserving the principles of justice and the rule of law." [41] Montana selects its judges through nonpartisan, popular elections.[42] It has done so since 1935.[43]

The effect of a preliminary injunction on the whole of the judicial election process in Montana and the unintended consequences of such restraint cannot be ignored. Montana's 1889 Constitution required that Montana Supreme Court Justices, District Court Judges, and Justices of the Peace be elected by the people.[44] With the ratification of the 1972 Montana Constitution, the people affirmed that Supreme Court Jus-

---

ing whether "the Judiciary's entanglement in the political work of the [Sentencing] Commission undermines public confidence in the disinterestedness of the Judicial Branch.").

**36.** *Republican Party of Minnesota,* 416 F.3d at 751.

**37.** *Republican Party of Minnesota,* 416 F.3d at 750 (citations omitted).

**38.** *Sanders County,* 698 F.3d at 744 (citing Mont.Code Ann. § 13–35–231).

**39.** *Sanders County,* 698 F.3d at 747.

**40.** *Sanders County,* 698 F.3d at 746.

**41.** *See* Doc. 5–1, 2008 Montana Code of Judicial Conduct Preamble [3], [1].

**42.** Mont.Code Ann. § 13–14–111: *see also* Mont Code Ann. 13–14–115(1) (ballots for nonpartisan office ballots are to "be without political designation").

**43.** *Sanders County,* 698 F.3d at 744.

**44.** 1889 Mont. Const., art. VIII, §§ 6, 20.

tices and District Judges shall be elected by the people, as well as Justices of the Peace.[45] "A justice of the peace must be nominated and elected on the nonpartisan judicial ballot in the same manner as judges of the district court."[46] An injunction at this time would dramatically affect the whole judicial election process. This Court would be derelict in its responsibilities if it were to turn a blind eye to those potentialities.

■ Taking the record as a whole, at most, the Court can say no more than the likelihood of success on the merits for either party is not demonstrated. The Plaintiff has not made a clear showing that he is likely to prevail. Montana's compelling interest in an independent, fair judiciary is firmly recognized.[47] The Court is not prepared to say that the restrictions of Rule 4.1(A)(7) are not narrowly tailored. Likelihood of success on the merits by Plaintiff has not been shown.

■ Plaintiff's argument in support of irreparable harm is itself facially flawed. The injunction, as sought, would not address that the Plaintiff would still be prohibited from using "the name of any existing political party or organization in the candidacy" under Montana Code Annotated § 13–10–602(2). That statute is not challenged and Plaintiff would not be shielded from its plain language by the preliminary injunction sought. The statute itself would be violated if the Plaintiff were to undertake the course of action that he wishes to take.[48]

As noted previously, the statute is not under attack. Granting the injunction as to Rule 4.1(A)(7) alone would not alleviate the harm Plaintiff claims would accrue. Therefore, I cannot conclude that the irreparable harm requirement has been shown.

■ Turning next to the requirement that an injunction be in the public interest, disruption of the whole of the judicial electoral process at this late date in the election calendar is problematic. Enjoining Rule 4.1(A)(7) is not justified if the statute remains, as it would, in full force and effect. Issuance of an injunction would result in a contradiction in the laws and rules governing nonpartisan judicial candidate conduct. Amici also have persuasively argued that striking Rule 4.1(A)(7) will have a broader effect upon on the viability of other Judicial Code of Conduct Rules.[49]

**45.** 1972 Mont. Const., art. VII, §§ 8, 5.

**46.** Mont.Code Ann. § 3–10–201(2).

**47.** *Sanders County*, 698 F.3d at 746.

**48.** (Docs. 1 at 5 ("French intends to seek [SCRCC's] endorsement . . . if [the] Court enjoins enforcement of Rule 4.1(A)(7)"); at 4 (if SCRCC were to endorse him, "French intends to accept the [SCRCC's] endorsement and include it in his campaign literature and discuss it during face-to-face campaigning."); 5–1 at 14 (for purposes of Rule 4.1(A)(7), the 2008 Montana Code of Judicial Conduct Terminology defines "political organization" as "a political party or other group sponsored by or affiliated with a political party or candidate, the principal purpose of which is to further the election or appointment of candidates for political office."); 17–3 at 1 (Sanders County

Republican Central Committee Bylaws, Article II–Purpose)). SCRCC is a political party or organization and falls within the definitional scope of "political organization" found within the Montana Judicial Code of Conduct. SCRCC itself is free to speak to endorse French or any candidate of its choosing at any time under the holding of *Sanders County*, 698 F.3d at 749.

**49.** *See* 2008 Montana Code of Judicial Conduct: Rule 2.3(B) (*Bias, Prejudice and Harassment*) requires that a judge not manifest bias or prejudice with regard to race, sex, gender or political affiliation (emphasis added in Amicus Brief); Rule 2.7 (*Responsibility to Decide*) discourages frequent disqualification (recusal) out of concern for public disfavor and the resulting burden on judicial colleagues; Rule 2.11 (*Judicial Statements on*

In particular, other provisions of Rule 4.1(A) would be implicated.[50] Therefore, the public interest leans against granting a preliminary injunction.

It is not necessary to reach the balance of the equities issue as the other conjunctive requirements under *Winter* are not satisfied. Nevertheless, the Plaintiff has not shown that the more lenient scrutiny standard of the *Winter* test applies in the first instance.

Plaintiff has not made the necessary clear showing to justify the conclusion that a preliminary injunction is appropriate. The preliminary injunction request is denied.

ORDERED:

Plaintiff's Motion for Preliminary Injunction[51] is DENIED.

---

*Pending and Impending Cases*) requiring that a judge not make "pledges, promises, or commitments that are inconsistent with the impartial* performance of the adjudicative duties of judicial office"; Rule 2.12 (*Disqualification*) requiring a judge to disqualify him or herself when the judge "has made a public statement ... that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy." The politicized judge would be in the position of frequent recusal in contravention of Rule 2.7.

**50.** (Doc. 5–1 at 45 (Rule 4.1(A)(12): "a judge or judicial a candidate* shall not: ... (12) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial* performance of the adjudicative duties of judicial office."); at 13 ("impartial" "mean[s] absence of bias or prejudice in favor of or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge.").)

