**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-3296
———————

RAMI SHALHOUB,
                                        Appellant
                        v.

ATTORNEY GENERAL OF THE UNITED STATES; SECRETARY, U.S.
DEPARTMENT OF HOMELAND SECURITY; SECRETARY, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT; PHILADELPHIA FIELD OFFICE DIRECTOR
FOR DETENTION; WARDEN, YORK COUNTY PRISON, YORK, PENNSYLVANIA

———————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-00976)
District Judge:  Honorable William W. Caldwell

———————————————

Submitted under Third Circuit LAR 34.1(a)
On October 27, 2011


Before:  FISHER, VANASKIE and ROTH, Circuit Judges


(Opinion filed: March 30, 2012)


———————

O P I N I O N

———————

**ROTH,** <u>Circuit Judge</u>:

Rami Shalhoub appeals the District Court's order denying his petition for a writ of habeas corpus. At the time Shalhoub filed his petition, United States Immigration and Customs Enforcement (ICE) was holding him in custody pending his removal from the country. He argued that this detention, because it was prolonged and imposed without a bond hearing, was both statutorily unauthorized and a violation of his constitutional right to due process. He has since been released, however, and we find that there is no reasonable expectation that he will again be detained. We conclude therefore that his petition is moot and we will dismiss it.

## I. BACKGROUND

Shalhoub is a native and citizen of Palestine. On December 3, 2005, he gained entry into the United States through the use of a fraudulent passport. His illegal entry was eventually detected, and on November 13, 2006, he was apprehended by a New Jersey police officer and detained by ICE. Removal proceedings were immediately commenced, in which Shalhoub was charged with unlawfully entering the United States with a visa obtained by using another individual's identity.[1]

Separately from his removal proceedings, Shalhoub was criminally charged with (1) fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. §§ 1546(a) and 2, and (2) aggravated identity theft during and in relation to that fraud and misuse, in violation of 18 U.S.C. §§ 1028A(a)(1) and (2). On December 11, 2007,

---

[1] Shalhoub obtained the visa to enter the United States by using a Jordanian passport bearing his photograph but the name of his cousin, a Jordanian citizen.

Shalhoub pleaded guilty to these charges, was convicted, and was sentenced to twenty-five months in prison.

On account of these convictions, ICE added an additional charge to Shalhoub's removal proceedings: that he was an alien who had been convicted of an "aggravated felony."[2] *See* 8 U.S.C. § 1227(a)(2)(A)(iii). On August 11, 2008, an immigration judge (IJ) issued a final order directing that Shalhoub be removed from the United States. However, because the judge found that Shalhoub faced a risk of being tortured in Jordan, the order prohibited ICE from removing him through Jordan and specified that he be removed through Israel.[3]

On November 7, 2008, Shalhoub was released from criminal custody and immediately taken into ICE custody. ICE began the process of removing Shalhoub through Israel, but its efforts were frustrated by the Israeli government's refusal to grant the necessary permission for him to transit its borders. On September 1, 2009, ICE therefore filed a motion to reopen Shalhoub's immigration proceedings in order to obtain authority to remove him instead through Jordan. On September 16, 2009, the proceedings were reopened, and Shalhoub filed for protection from removal through Jordan. The (IJ) ultimately issued an order granting Shalhoub withholding of removal to Jordan, which ICE appealed to the Board of Immigration Appeals (BIA).

---

[2] An offense of passport fraud for which the term of imprisonment is at least twelve months constitutes an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(P).

[3] Shalhoub's removal to Palestine could be completed only by transit through one of these two countries.

Shalhoub remained in ICE custody throughout this process. On January 12, 2010, he filed an amended petition for a writ of habeas corpus, in which he requested that the District Court order either that he be released or that he be given a bond hearing. On June 1, 2010, the Court denied this request. It found that Shalhoub was not subject to a final order of removal because, in light of ICE's then pending appeal to the BIA, his removal proceedings had not yet been completed. And because of Shalhoub's visa fraud conviction, the court also held that, pursuant to 8 U.S.C. § 1226(c)(1)(B), detention during the entire pendency of his removal proceedings was mandatory. Finally, the court held that, considering the complications that arose in completing Shalhoub's removal, his detention was not unreasonably long and thus did not violate his right to due process.

On July 29, 2010, Shalhoub filed this appeal. He argues that, when removable aliens detained pre-final order, detention may last for only a "brief period," not for a period as prolonged as his own detention.[4] He claims that, by statute, ICE can keep him in custody for a prolonged period only if it shows at a bond hearing that it has a strong justification for doing so. Shalhoub contends in the alternative that prolonged detention without this procedural safeguard violates his right to due process. On these bases, he asks for either his "immediate release under reasonable conditions of supervision" or "that he immediately be provided a constitutionally adequate hearing where the government bears the burden of demonstrating that his continued detention is justified."

---

[4] At the time he filed his amended habeas petition, Shalhoub had been in ICE custody for approximately fourteen months.

On February 28, 2011, ICE's appeal of the withholding of removal to Jordan was resolved after multiple proceedings before both the BIA and the IJ when Shalhoub was again granted withholding of removal to Jordan. On May 27, Shalhoub was released from detention under an Order of Supervision. On July 26, ICE filed a motion with the immigration court to identify Israel as his country of removal. On August 25, 2011, the IJ issued an amended removal order directing that Shalhoub be removed to Israel, which ICE did not appeal. ICE argues that these events have rendered Shalhoub's habeas petition moot and has moved to dismiss the petition.

## II.  DISCUSSION

Article III of the United States Constitution empowers federal courts to exercise their judicial power only over actual cases and controversies. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Federal courts therefore have no authority "to decide questions that cannot affect the rights of litigants in the case before them." *Id.* This limitation "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). For this reason, any time that the parties to a case come to "lack a legally cognizable interest in [its] outcome," the case is deemed moot and must be dismissed for lack of jurisdiction. *Murphy v. Hunt*, 455 U.S. 478, 481, 484 (1982). If there is no meaningful relief that can be granted to a plaintiff in satisfaction of his claims, he lacks this requisite interest. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993).

In his habeas petition, Shalhoub requests only that he be granted either supervised release or a bond hearing through which he could obtain such release. However, because ICE has now released him, there is no meaningful relief that he can obtain on his habeas petition. As a result, that petition is moot.

Shalhoub urges that, notwithstanding his release, our jurisdiction persists because his detention is "capable of repetition while evading review." *See Turner v. Rogers*, 564 U.S. —, 131 S. Ct. 2507, 2515 (2011) (citation and internal quotation marks omitted). Under this exception to the mootness doctrine, federal courts possess jurisdiction over a dispute if "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* (citation and internal quotation marks omitted). We find, though, that there is no reasonable expectation that Shalhoub will again be subjected to immigration detention. We reach this conclusion because, now that there is a final order of removal in his case, Shalhoub is ineligible for pre-final order detention. That type of detention could be imposed only if ICE successfully reopened Shalhoub's immigration proceedings. However, given that ICE obtained its desired result in the most recent round of proceedings – an order identifying Israel as his country of removal – we find that there is no reasonable expectation that this will occur. Although ICE can hold removable aliens in custody after the entry of a final order of removal, it ordinarily can do so only for a ninety day removal period, *see* 8 U.S.C. § 1231(a)(1)-(3), which, in Shalhoub's case, has already expired. While this detention can be extended in certain exceptional circumstances, *see id.* at §§

6

1231(a)(1)(C), (6), Shalhoub's release at the approximate conclusion of the removal period and the statement in his Order of Supervision that he was being released because that period had expired lead us to conclude that there is no reasonable expectation that ICE will attempt to do so.

Shalhoub argues that his petition is not moot under our decision in *Diop v. ICE*, 656 F.3d 221 (3d Cir. 2011), but that case is distinguishable. In *Diop*, we did find that a removable alien's challenge to his pre-final order detention was not mooted by his release because his detention was capable of repetition while evading review. In that case, the alien was released as a result of the vacatur of the criminal conviction that mandated his pre-final order detention. Because the Government's position implied that the reinstatement of the conviction on a then-pending appeal would require the alien to go back into custody, we held that there was a reasonable expectation that he would once again be detained. However, no similar circumstances are present in this case.

Shalhoub additionally claims that our decision in *United States v. Frumento*, 552 F.2d 534 (3d Cir. 1977), requires us to adjudicate his appeal. We disagree. In *Frumento*, we exercised jurisdiction over a challenge to an order of contempt and confinement imposed on a witness who refused to testify at a criminal trial even after the trial had ended and the witness had been released. But we did so on the basis of our finding that the witness's confinement was "capable of repetition," because he "probably" would be called to testify again at the trials of other defendants in related criminal proceedings. *Id.* at 537-40; 540 n.9. As we have already explained, however, in Shaloub's case, there is no reasonable expectation of further detention. While we stated in *dictum* in *Frumento*

7

that we would have exercised jurisdiction even if we hypothetically "could not [have] construct[ed] or project[ed] any 'capability of repetition'" in that case, *id.* at 540, we explained that that was because review of an order of confinement that is effective only for the duration of a criminal trial, "as a practical matter is [otherwise] not available." *Id.* at 541. The same is not true for review of immigration detention that is allegedly prolonged and indefinite. *Frumento* thus fails to establish that Shaloub's habeas petition is not moot.

## III. CONCLUSION

Because Shalhoub's habeas petition is moot, we lack jurisdiction to resolve his appeal. We will accordingly vacate the District Court's order and remand the case with directions to dismiss the petition. *See N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 34 (3d Cir. 1985).