# United States Court of Appeals for the Federal Circuit

_____

**ASSOCIATED ENERGY GROUP, LLC, DBA AEG FUELS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2024-1574

_____

Appeal from the United States Court of Federal Claims in No. 1:23-cv-02158-AOB, Judge Armando O. Bonilla.

_____

Decided:  March 19, 2025

_____

TODD JOHN CANNI, Baker & Hostetler LLP, Los Angeles, CA, argued for plaintiff-appellant.  Also represented by KEVIN BARNETT, KEVIN DORN, STEPHEN E. RUSCUS, KAITLYN ELIZABETH TOTH, Washington, DC.

DANIEL BERTONI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, IOANA C. MEYER, DOUGLAS K. MICKLE.

_____

2                    ASSOCIATED ENERGY GROUP, LLC v. US

Before MOORE, *Chief Judge*, STOLL and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

In some cases, a pal is all you need. This is one of those cases.

Appellant Associated Energy Group, LLC ("AEG") has initiated multiple bid protests concerning several contracts managed by the U.S. Department of Defense, Defense Logistics Agency Energy ("DLA") to deliver fuel to a U.S. military base (Camp Lemonnier) and nearby airfield (Chabelley Airfield) located in the Republic of Djibouti in the Horn of Africa. This appeal concerns only whether AEG has standing to bring its second bid protest in the U.S. Court of Federal Claims (the "Claims Court"), challenging a (now-expired) one-year sole-source bridge contract award to the incumbent contractor. Because this issue is not moot but AEG lacks standing, we affirm the Claims Court's dismissal for lack of subject matter jurisdiction.

## BACKGROUND

To provide fuel in Djibouti, a fuel supplier must have a petroleum activity license or "PAL" issued by the Djiboutian government. In May 2022, DLA issued a solicitation for a five-year contract with 24 line-items to supply fuel to military bases throughout Africa, including Djibouti. In January 2023, DLA awarded AEG four line-items. The order period began in February 2023. During that same month, AEG alerted DLA that officials within the Djiboutian Ministry of Energy and Natural Resources ("MOE") were:

> preventing contract performance [by] [t]hreatening AEG's contracted fuel delivery truck drivers, including [1] Ethiopia's National Oil Company, NOC, Djibouti [("NOC")] and [2] French fuel distributor Rubis Djibouti [("Rubis")]; physically blocking AEG contractors from picking up and delivering fuel to

the U.S. military installations; and declining or re-fusing to issue or renew petroleum activity licenses [("PALs")] to AEG and/or its contractors.

J.A. 8 ll. 6–17.  Significant to this case, "it is undisputed that neither AEG nor its Djiboutian fuel delivery contrac-tors [*i.e.*, NOC and Rubis] possess the required PAL." J.A. 22 ll. 11–13; J.A. 186 ll. 4–7 ("AEG, and its fuel deliv-ery contractors, still do not have the required fuel trans-portation licenses and nothing in the record suggests a material change in status is imminent.").

Several months later, DLA discovered that incumbent contractor United Capital Investments Group, Inc. ("UCIG") was the only vendor with a valid MOE-issued PAL.  AEG alleges that "MOE officials have engaged and continue to engage in a pay-to-play scheme, wherein Dji-boutian Government officials decline to issue permits and licenses to foreign companies, including AEG, who refuse graft and bribe demands."[1]  J.A. 11 ll. 12–16.

On September 1, 2023, DLA awarded a six-month sole-source bridge contract to UCIG, with an additional six-month option running through August 31, 2024.  DLA in-voked "U.S. national security interests in the region" to "is-sue[] the noncompetitive sole source contract to UCIG under [Federal Acquisition Regulation] 6.302-2 titled 'Un-usual and compelling urgency.'  In accordance with FAR 6.302-2(a)(2), DLA did not publicize a notice of the contract action or otherwise engage in full and open

---

[1]    As of the Claims Court's February 2024 bench rul-ing dismissing this case, AEG's allegations "[we]re under investigation" and "ha[d] not yet been proven, or even pros-ecuted, by duly authorized government officials."  J.A. 186 l. 24–J.A. 187 l. 11.

competition."    J.A. 12 ll. 7–13; *see* 48 C.F.R. § 6.302-2.[2]
DLA's purpose for the bridge contract was "to maintain an
adequate fuel supply to the two military installations"
while "the Djiboutian MOE considered and possibly
granted necessary licenses to other vendors," among other
things.  J.A. 12 ll. 14–21.

The bridge contract involved the delivery of three types
of petroleum products to Camp Lemonnier and Chabelley
Airfield in Djibouti.  The solicitation for the sole-source
bridge contract provided that:

> Offeror's [sic] must possess **ALL** valid/current op-
> erating certificates, permits, or equivalent licenses
> required to operate in the prescribed jurisdiction.
> The Djibouti Ministry of Energy is the sole author-
> ity that can facilitate the latter stated require-
> ments.  **Three (3) licenses must be submitted**
> **with your offer to include; Patent License,**
> **Commercial License, and Petroleum Activi-**
> **ties License from the Djiboutian Ministry of**
> **Energy.**

J.A. 263 (citation omitted).  Accordingly, the bridge con-
tract that AEG challenges here explicitly required bidders
to have a PAL, yet neither AEG nor its in-country suppliers
had one.

AEG initiated the bid protest at issue here, challenging
the sole-source bridge contract award to UCIG, on Decem-
ber 20, 2023.  Importantly, AEG's Claims Court Complaint

---

[2]    FAR 6.302-2 authorizes the award of emergency
contracts without full and open competition when an
agency's need for the service acquired "is of such an unu-
sual and compelling urgency that the Government would
be seriously injured unless the agency is permitted to limit
the number of sources from which it solicits bids or pro-
posals."  48 C.F.R. § 6.302-2(a)(2).

for this bid protest contains five counts: (1) DLA's flawed responsibility decision violated FAR Subpart 9.1 and was arbitrary and capricious;[3] (2) DLA's claimed "urgency" for the sole-source award was a byproduct of its own making and failure to engage in advance planning; (3) DLA arbitrarily, capriciously, and unlawfully awarded a sole-source bridge contract to UCIG without requesting offers from as many potential sources as practicable; (4) DLA arbitrarily, capriciously, and unlawfully awarded a sole-source bridge contract to UCIG in violation of FAR 6.302-2(d) because the 12-month period exceeds the time necessary; and (5) the record demonstrates that preliminary and permanent injunctive relief is appropriate.

Also significant here, AEG sought the following relief from the Claims Court in its Complaint: (1) declare that DLA's sole-source contract to UCIG for fuel supply services in Djibouti violates governing law and regulations; (2) enjoin DLA's sole-source contract to UCIG and enjoin DLA from making subsequent sole-source awards for such fuel; (3) direct DLA to (a) terminate the sole-source contract to UCIG, (b) conduct a full and open competition for interim fuel supply services in Djibouti in accordance with the Competition In Contracting Act (CICA) and FAR Subpart 9.1, and (c) engage in advance planning and accounting to avoid being in the position of issuing future sole-source awards; and (4) award AEG its attorneys' fees, expenses, and costs.

---

[3]    FAR Subpart 9.1 requires that a contracting officer make an affirmative determination of responsibility with respect to the prospective awardee of a government contract. *See* 48 C.F.R. § 9.100 *et seq.*; *see id.* § 9.103 ("Purchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only. . . . No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility.").

Following oral argument on dispositive cross-motions, the Claims Court ruled from the bench that AEG lacked both Article III constitutional standing and Tucker Act statutory standing to challenge the sole-source bridge contract awarded to UCIG. Accordingly, the Claims Court dismissed AEG's Complaint. AEG appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the grant of a motion to dismiss for lack of jurisdiction de novo. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). We also review whether a party has standing to sue de novo. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). We review underlying factual findings for clear error. *REV, LLC v. United States*, 91 F.4th 1156, 1163 (Fed. Cir. 2024).

"The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (omission in original) (citation omitted). Article III standing, like mootness, is a threshold jurisdictional issue. *E.g.*, *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1330–31 (Fed. Cir. 2008); *North Carolina v. Rice*, 404 U.S. 244, 245–46 (1971). Tucker Act standing is not jurisdictional. *E.g.*, *REV*, 91 F.4th at 1163. "[W]e may address jurisdictional issues in any order." *Kaw Nation v. Norton*, 405 F.3d 1317, 1323 (Fed. Cir. 2005).

## I

We begin with mootness. On September 27, 2024, approximately two weeks before oral argument, the Government filed a letter in which it provided the court with an update on the bridge contract's status: "[T]he ordering period pursuant to the bridge contract expired on August 31, 2024, and DLA has not extended that ordering period. . . .

[T]he bridge contract allows for a 30-day 'carry-over' period, . . . [which] ends on September 30, 2024, and will not be extended." ECF No. 59 (citation omitted). The Government also explained that "DLA issued awards to three offerors on September 26, 2024, and these awards will supersede the bridge contract." *Id.*

At oral argument, the Government asserted that this case is moot due to the bridge contract's expiration. Oral Arg. at 23:11–40, https://oralarguments.cafc.us courts.gov/default.aspx?fl=24-1574_10102024.mp3. AEG argues that "this dispute falls within an exception to the traditional mootness doctrine: claims capable of repetition, yet evading review." Appellant's Br. 44. As we have explained:

> To qualify for this exception, the challenged action must meet two conditions. First, the action must in its duration [be] too short to be fully litigated prior to its cessation or expiration. Second, there must be a reasonable likelihood that the party will again suffer the [injury] that gave rise to the suit.

*Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995) (alterations in original) (citations and internal quotation marks omitted). At oral argument, the Government conceded that AEG's action is capable of repetition (and "in fact, has been repeated"), but argued that AEG cannot meet the evasion-of-review requirement. Oral Arg. at 23:38–24:01. Because the Government does not dispute that AEG meets the second requirement above (repetition), we focus on the first requirement (evasion of review).

"'[E]vading review' means that the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) (citation omitted). The Supreme Court has held that the mootness exception at issue applies to "short-

term" procurement contracts that "were fully performed in less than two years after they were awarded." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) ("[A] period of two years is too short to complete judicial review of the lawfulness of the procurement."); *see also, e.g.*, *In re Flint Water Cases*, 53 F.4th 176, 189 (6th Cir. 2022) (citing Supreme Court case law and acknowledging that twelve-, eighteen-, and twenty-four-month periods are "too short to obtain complete review"). We agree with AEG that its "bid protest falls within even shorter legal time constraints [than the two-year period discussed in *Kingdomware*] because the procurement at issue is comprised of one six-month base period and one six-month option – at most, only one year." Appellant's Br. 46.

We thus hold that AEG meets both requirements of the "capable of repetition, yet evading review" exception to mootness. Accordingly, this case is not moot.

## II

We proceed to analyze Article III standing, the only other threshold jurisdictional issue presented.

Article III standing requires that a plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A] plaintiff's *complaint* must establish that he has a 'personal stake' in the alleged dispute . . . ." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (emphasis added). "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: What's it to you?" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted).

AEG argued to the Claims Court that "the redressable injury here for [AEG] is invalidating this [PAL] requirement, this solicitation, allowing [AEG] to bid." J.A. 83

ll. 8–10. But in its Complaint, AEG did not challenge or seek relief related to the bridge contract's PAL requirement. When asked at oral argument where in the Complaint AEG challenged the bridge contract's inclusion of the PAL requirement, counsel for AEG responded by listing paragraph 64 in the Statement of Facts and paragraphs 126–27 in Count II. Oral Arg. at 7:06–11:05.

The paragraphs cited by AEG do not challenge the PAL requirement. First, in paragraph 64, part of the Statement of Facts, AEG cites only to paragraphs 10 and 21 of the declaration of U.S. Air Force Retired Colonel Todd Cheney dated December 19, 2023 (Exhibit 1 to the Complaint). But the Claims Court struck these and several other paragraphs (7 through 44) of this declaration.[4] Second, in paragraphs 126–27, AEG makes no mention of the PAL requirement. In fact, AEG does not mention the PAL requirement in any of its five claims, or as part of the relief it seeks. *See* J.A. 410–22.

Accordingly, even if the Claims Court were to grant AEG the relief sought in its Complaint such that DLA must terminate the sole-source contract awarded to UCIG and conduct a full and open competition for interim fuel supply services in Djibouti, AEG would remain ineligible and unable to perform because AEG and its in-country suppliers lack the PAL expressly required by the unchallenged contract terms. *See* J.A. 188 ll. 5–9 ("[Even] if th[e Claims] Court were to enjoin the performance of the bridge contract to UCIG for whatever reason claimed by AEG and direct the DLA contracting officer to resolicit the fuel delivery contract, AEG would not be eligible for award."). In other words, regardless of whether AEG were to win or lose its second bid protest, it could not bid on or compete for the bridge contract. And, in contracting cases, the Supreme

---

[4] On appeal, AEG does not challenge the Claims Court's decision to strike portions of this declaration.

Court has explained that "[t]o establish standing," a plaintiff must "demonstrate that it is able and ready to bid on contracts," among other things. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). As such, "[b]ecause [AEG] ha[s] no concrete stake in the lawsuit, [it] lack[s] Article III standing." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 542 (2020).

### III

Even if AEG could establish Article III standing, we would still affirm the Claims Court's dismissal of AEG's second bid protest for lack of statutory standing.

The Tucker Act, 28 U.S.C. § 1491(b)(1), "imposes more stringent standing requirements than Article III." *Weeks Marine*, 575 F.3d at 1359. To meet the Tucker Act's more stringent requirements, the plaintiff must make two separate showings:

> The party first must show that it is an "interested party." To satisfy the interested party requirement, a party must show that it (1) is an actual or prospective bidder and (2) has a direct economic interest in the procurement or proposed procurement. To prove a direct economic interest, a party must show that it had a substantial chance of winning the contract.

> The second standing requirement requires a party show that it was prejudiced by a significant error in the procurement process. To satisfy the prejudice requirement, the party must show that but for the Government's error, the party would have had a substantial chance of securing the contract.

*Diaz v. United States*, 853 F.3d 1355, 1358–59 (Fed. Cir. 2017) (cleaned up) (citations omitted). Accordingly, "[t]o establish statutory standing, and demonstrate it is an 'interested party' and sustained prejudice, [AEG] must show

at least a substantial chance it would have been a prevailing bidder under the [bridge contract s]olicitation had it not been for the errors it contends plagued the procurement process." *REV*, 91 F.4th at 1163. "We review determinations of standing under the Tucker Act *de novo*." *Id.*; *see, e.g.*, *Rex Serv. Corp.*, 448 F.3d at 1306–07 (citing *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1298 (Fed. Cir. 2001)). "Prejudice is a factual question that we review for clear error." *Diaz*, 853 F.3d at 1359; *REV*, 91 F.4th at 1163.

Emphasizing "AEG's ineligibility to be awarded the bridge contract due to the lack of the PAL," the Claims Court explained that "AEG lacks the requisite economic interest in the solicitation because it did not have a substantial chance, or any chance, of being awarded the bridge contract." J.A. 189 ll. 9–15. We agree. Moreover, as noted in the discussion of Article III standing, the Claims Court found that even if it were to grant AEG the relief sought in its Complaint to remedy the alleged DLA errors, AEG would still not be eligible for (and thus would have no substantial chance of winning) the award. We see no clear error in the Claims Court's fact finding.

AEG argues that "the [Claims Court's] position that AEG lacked a substantial chance of award **because AEG does not have the PAL** is in direct conflict with [our] Court's long-standing precedent that a protester need not show it has a substantial chance of award **despite the alleged errors**." Appellant's Br. 42 (citation omitted); *see also* Appellant's Br. 43 ("[I]t was improper for the [Claims Court] to evaluate AEG's standing based on its compliance with requirements that AEG was challenging as improper . . . ."). AEG urges that it would have bid and "had a substantial chance of award if DLA had conducted a competitive lawful procurement and solicited proposals, *did not impose terms that require the payment of illegal bribes*, conducted a proper responsibility determination, and otherwise conducted the procurement in accordance with

governing law and regulations." Appellant's Reply Br. 11 (emphasis added). But, again, in its Complaint AEG did not challenge or seek removal of the PAL requirement in the bridge contract.

As we described above, in its Complaint AEG claims that DLA made the following errors: (1) its responsibility decision violated FAR Subpart 9.1 and was arbitrary and capricious; (2) it failed to engage in advance planning; (3) it arbitrarily, capriciously, and unlawfully awarded a sole-source bridge contract to UCIG without requesting offers from as many potential sources as practicable; and (4) it arbitrarily, capriciously, and unlawfully awarded a sole-source bridge contract to UCIG in violation of FAR 6.302-2(d). *See* J.A. 410–22. Even absent these alleged errors, however, AEG would still not be able to secure the bridge contract because it has no PAL and neither do its in-country suppliers. We thus agree with the Claims Court that AEG lacks statutory standing under the Tucker Act.

## CONCLUSION

We have considered AEG's remaining arguments and find them unpersuasive. For the foregoing reasons, we conclude that an exception to mootness applies to this case and that AEG lacks constitutional and statutory standing. We thus affirm the Claims Court's dismissal.

## **AFFIRMED**